## WARE AND LELAND *v.* MOBILE COUNTY.
## WARE AND LELAND *v.* STATE OF ALABAMA.

ERROR TO THE SUPREME COURT OF THE STATE OF ALABAMA.

Nos. 173, 174.   Submitted March 10, 1908.—Decided April 6, 1908.

Contracts for sales of cotton for future delivery, which do not oblige interstate shipments, are not subjects of interstate commerce, nor does the fact that a delivery may be made by means of interstate carriage make them so; and a state tax on persons engaged in buying and selling cotton for future delivery held in this case not to be a regulation of interstate commerce and as such beyond the power of the State. *Paul* v. *Virginia* (insurance policy case), 8 Wall. 168, followed; *Lottery Case*, 188 U. S. 321; *Rearick* v. *Pennsylvania*, 203 U. S. 507, distinguished.

146 Alabama, 163, affirmed.

THE facts are stated in the opinion.

*Mr. Burwell Boykin Boone* for plaintiffs in error:

The license tax in question, sought to be collected from the plaintiffs in error, is a burden upon and a regulation of interstate commerce, and in conflict with Article I, Section 8, para-

graph 3, of the Constitution of the United States. *Champion* v. *Ames,* 188 U. S. 351; *Hanley* v. *Kansas City Southern R. R. Co.,* 187 U. S. 619; *Stradford* v. *City Council of Montgomery,* 110 Alabama, 619; *Stockard* v. *Morgan,* 185 U. S. 27; *Brennan* v. *Titusville,* 153 U. S. 289; *Caldwell* v. *North Carolina,* 187 U. S. 622.

No counsel appeared for defendants in error.

MR. JUSTICE DAY delivered the opinion of the court.

These cases were submitted together and are in all respects similar, and involve the constitutional validity of subdivision 40 of an act of the legislature of Alabama imposing license taxes, "to better provide for the revenue of the State," General Acts, 1903, p. 207, which reads as follows:

"For each person engaged in the business of buying and selling futures for speculation or on commission, either for themselves or for other persons, and each place of business commonly known as cotton exchanges, or stock exchanges, and sometimes called 'bucket shops,' in towns and cities of twenty thousand inhabitants or more, five hundred dollars; in all other towns and cities, two hundred and fifty dollars; but this shall not be held to legalize any contract which would otherwise be invalid."

In case No. 173 the action was brought by Mobile County for the recovery of the defendants' license tax for the year 1903, for engaging in the business of buying and selling futures on commission for other persons in the city of Mobile. The other case (No. 174) was an action by the State. Plaintiffs recovered in the Circuit Court and both judgments were affirmed by the Supreme Court. 146 Alabama, 163.

The cases were submitted upon an agreed statement of the facts as follows:

"During the whole of the year 1903 defendants had an office in the city of Mobile, in the county of Mobile and State

of Alabama: they also had offices in the city of New York in the State of New York, and in the city of New Orleans in the State of Louisiana, and in the city of Chicago in the State of Illinois, each of which offices was connected by private telegraph wires with said Mobile office. Said Mobile, Alabama, office was in the charge of their agent, one Robbins, and was engaged in the business of buying and selling cotton for future delivery, on commission, for the public generally and for special customers, said business being conducted in the following way and in no other way: They would undertake, through their agent, to buy or sell a cotton future contract for a customer in the Cotton Exchange in New York or in New Orleans, as he might select, he making at the time a deposit of money with them as a margin to protect them against loss in making such transaction for him. When the customer gave the order to Ware and Leland, either for a sale or a purchase of a future contract, it was not usual for anything to be said between them about an actual delivery of the cotton, but when the transaction was commenced by a purchase or sale of the cotton Ware and Leland would immediately furnish to the customer a memorandum thereof, partly written and partly printed, upon which the following stipulations were printed: 'On all marginal business, we reserve the right to close transactions without further notice when margins are about exhausted, and to settle contracts in accordance with the rules and customs of the exchange on which the order is placed, it being understood and agreed in all trades that actual delivery is contemplated,' and 'All purchases and sales made by us for you are made in accordance with and subject to the rules, regulations and customs of the exchange on which the order is placed, and the rules, regulations and requirements of the board of managers of said exchange, and all amendments that may be made thereto.' Such agent would thereupon transmit such order by their private telegraph line to the defendants' office in the city without the State of Alabama selected for such transaction; that such order would be there-

upon executed by defendants by the purchase or sale, as directed, of a future cotton contract for such customer in the cotton exchange of the city to which such order was sent, and subject to the rules and regulations of such cotton exchange, which rules and regulations may be introduced in evidence by defendants in this cause; that said contract would be held by defendants for such customer until he ordered the same closed out, when they would sell or buy another cotton contract against it as might be necessary to cover the same or close it out, or receive or deliver the cotton on said contract. If a profit was made on the transaction defendants remitted the same to its agent in Mobile, who paid it over to the customer; if a loss was made, it was taken by the agent out of the customers' margin, or, if that was insufficient therefor, the customer was called on for the balance. Said business was done on a commission paid defendants by the customers.

"No actual delivery of cotton or grain was ever made on any such contracts, except in a few instances, when such deliveries were made where the contracts were executed, to wit: in New York, New York, or in New Orleans, Louisiana, or Chicago, Illinois. When any such delivery of cotton was made to defendants for the customer on a purchase by him, it was held by the defendants for account of the customer at the place of delivery, either in New York, New York, or in New Orleans, Louisiana, until ordered sold by the customer, and was then sold by them there for the account of the customer, and the proceeds accounted for by them to such customer. When they made delivery of cotton on a sale of futures made by them for a customer, the cotton was shipped by the customer for whom such sale was made from Alabama to the place of sale and there delivered through defendants to the buyer.

"A similar future grain business was done by defendants at their said office in Mobile, Alabama, for customers through their office in Chicago, in the State of Illinois—said orders being executed on the Chicago, Illinois, Board of Trade, and subject to its rules and regulations, which contemplated and

provided for the actual receipt or delivery of grain bought or sold therein—such delivery to be made in Chicago, Illinois.

"During the whole of the year 1903 said city of Mobile, Alabama, was a city of more than twenty thousand inhabitants.

"Defendant paid to plaintiff a license tax of one hundred dollars for doing such business in said city for the year 1903, which payment was made prior to the fourth day of March, 1903; they have not paid any further license tax to plaintiff for doing such business in said year."

Upon the trial of the action, in addition to the foregoing agreed facts, the counsel for the plaintiff admitted that the rules and regulations of the New York Cotton Exchange, New Orleans Cotton Exchange and Chicago Board of Trade, respectively, provided "that contracts executed therein should be in writing; and also provided that in every cotton or grain contract for future delivery executed and entered into in said exchange or board of trade, it should be stipulated, agreed and understood that an actual receipt and delivery of the cotton or grain was to be had, and that said contracts were transferable and assignable."

The sole question here presented is, whether the statute in question is an attempt to regulate interstate commerce, for if the plaintiffs in error are shown by the foregoing agreed facts to be engaged in interstate commerce then the statute is void, as an attempt by a State to regulate the commerce which the Constitution of the United States places within the exclusive control of Federal authority.

Interstate commerce must be such as takes place between States as differentiated from commerce wholly within a State. It must have reference to interstate trade or dealing, and if the regulation is not such, and comprehends only commerce which is internal, the State may legislate concerning it. In each case the recurring question is, on which side of the line does the commerce under investigation fall?

It is unnecessary to review the former decisions of this court,

as that has been done in very recent cases such as the *Lottery case,* 188 U. S. 321, where it was held that the transportation of lottery tickets was interstate commerce, and as such subject to regulation by act of Congress. In that case the Federal act, prohibiting the transmission of lottery tickets, was sustained, because of the actual carriage in interstate traffic of the tickets themselves, and in concluding the opinion of the majority of the court Mr. Justice Harlan said (p. 363):

"The whole subject is too important, and the questions suggested by its consideration are too difficult of solution, to justify any attempt to lay down a rule for determining in advance the validity of every statute that may be enacted under the commerce clause. We decide nothing more in the present case than that lottery tickets are subjects of traffic among those who choose to sell or buy them; that the carriage of such tickets by independent carriers from one State to another is therefore interstate commerce; that under its power to regulate commerce among the several States Congress—subject to the limitations imposed by the Constitution upon the exercise of the powers granted—has plenary authority over such commerce and may prohibit the carriage of such tickets from State to State; and that legislation to that end, and of that character, is not inconsistent with any limitation or restriction imposed upon the exercise of the powers granted to Congress."

And in *Leloup* v. *Mobile,* 127 U. S. 640, it was held that a telegraph company, whose business is the transmission of messages from one State to another, invested with the powers and privileges conferred by Congress, could not be compelled to pay a license tax by the State. And in *Pensacola Telegraph Co.* v. *Western Union Telegraph Co.,* it was held that interstate telegraphic communications, conducted by companies organized for that purpose, was commerce within the regulating power of Congress. The *Pensacola case* was affirmed in *Telegraph Co.* v. *Texas,* 105 U. S. 460, in which case Mr. Chief Justice Waite, speaking for the court, said, p. 464: "A telegraph company occupies the same relation to commerce as

a carrier of messages that a railroad company does as a carrier of goods."

While the general principles applied in these cases are not to be denied, there is a class of cases which hold that contracts between citizens of different States are not the subjects of interstate commerce, simply because they are negotiated between citizens of different States, or by the agent of a company in another State, where the contract itself is to be completed and carried out wholly within the borders of a State, although such contracts incidentally affect interstate trade.

As in the cases involving insurance policies, it has been held that issuing them in one State and sending them to another, to be there delivered to the insured upon payment of premium, is not a transaction of interstate commerce. *Paul* v. *Virginia*, 8 Wall. 168; *Hooper* v. *California*, 155 U. S. 648; *New York Life Insurance Co.* v. *Cravens*, 178 U. S. 389.

In *Paul* v. *Virginia*, Mr. Justice Field, delivering the opinion of the court, said (p. 183):

"Issuing a policy of insurance is not a transaction of commerce. The policies are simple contracts of indemnity against loss by fire, entered into between the corporations and the assured, for a consideration paid by the latter. These contracts are not articles of commerce in any proper meaning of the word. They are not subjects of trade and barter offered in the market as something having an existence and value independent to the parties to them. They are not commodities to be shipped or forwarded from one State to another, and then put up for sale. They are like other personal contracts between parties which are completed by their signature and the transfer of the consideration. Such contracts are not interstate transactions, though the parties may be domiciled in different States. The policies do not take effect—are not executed contracts—until delivered by the agent in Virginia. They are, then, local transactions, and are governed by the local law. They do not constitute a part of the commerce between the States any more than a contract for the purchase

and sale of goods in Virginia, by a citizen of New York whilst in Virginia, would constitute a portion of such commerce."

In *Hooper* v. *California*, 155 U. S. 648, it was said:

"If the power to regulate interstate commerce applied to all the incidents to which said commerce might give rise and to all contracts which might be made in the course of its transaction, that power would embrace the entire sphere of mercantile activity in any way connected with trade between the States; and would exclude State control over many contracts purely domestic in their nature. The business of insurance is not commerce. The contract of insurance is not an instrumentality of commerce. The making of such a contract is a mere incident of commercial intercourse, and in this respect there is no difference whatever between insurance against fire and insurance against 'the perils of the sea.' "

These cases are not in conflict with those in which it is held that the negotiation of sales of goods in a State by a person employed to solicit for them in another State, the goods to be shipped from the one State to the other, is interstate commerce. *Robbins* v. *Shelby County Taxing District*, 120 U. S. 489; similar cases are *Rearick* v. *Pennsylvania*, 203 U. S. 507, and *Caldwell* v. *North Carolina*, 187 U. S. 622. In these cases goods in a foreign State are sold upon orders for the purpose of bringing them to the State which undertakes to tax them, and the transactions are held to be interstate commerce, because the subject-matter of the dealing is goods to be shipped in interstate commerce; to be carried between States and delivered from vendor to purchaser by means of interstate carriage.

But how stands the present case upon the facts stipulated? The appellants are brokers who take orders and transmit them to other States for the purchase and sale of grain or cotton upon speculation. They are, in no just sense, common carriers of messages, as are the telegraph companies. For that part of the transactions, merely speculative and followed by no actual delivery, it cannot be fairly contended that such contracts are

the subject of interstate commerce; and concerning such of the contracts for purchases for future delivery, as result in actual delivery of the grain or cotton, the stipulated facts show that when the orders transmitted are received in the foreign State the property is bought in that State and there held for the purchaser. The transaction was thus closed by a contract completed and executed in the foreign State, although the orders were received from another State. When the delivery was upon a contract of sale made by the broker, the seller was at liberty to acquire the cotton in the market where the delivery was required or elsewhere. He did not contract to ship it from one State to the place of delivery in another State. And though it is stipulated that shipments were made from Alabama to the foreign State in some instances, that was not because of any contractual obligation so to do. In neither class of contracts, for sale or purchase, was there necessarily any movement of commodities in interstate traffic, because of the contracts made by the brokers.

These contracts are not, therefore, the subjects of interstate commerce, any more than in the insurance cases, where the policies are ordered and delivered in another State than that of the residence and office of the company. The delivery, when one was made, was not because of any contract obliging an interstate shipment, and the fact that the purchaser might thereafter transmit the subject-matter of purchase by means of interstate carriage did not make the contracts as made and executed the subjects of interstate commerce.

We are of the opinion that the Supreme Court of Alabama correctly held that the transactions of the plaintiffs in error were not interstate commerce, and the judgments in both cases are

*Affirmed.*