## PACIFIC STATES PAPER TRADE ASS'N et al. v. FEDERAL TRADE COMMISSION.*

(Circuit Court of Appeals, Ninth Circuit. February 9, 1925. Rehearing Denied March 9, 1925.)

No. 4217.

1. Monopolies ⬤⟝17(1)—Independent use of association price lists by salesmen of paper dealers in making sales in other states held not in violation of Anti-Trust Act.

The use of price lists of local associations of wholesale paper dealers by salesmen of their members in making sales in other states, where such use is made independently, and not through any combination or agreement, and where the salesmen are not bound by them in making sales in other states by any rule of the associations, but are free to vary therefrom, held not to establish a combination to fix prices or limit competition, in violation of the Anti-Trust Act (Comp. St. §§ 8820-8823, 8827-8830).

2. Commerce ⬤⟝40(1) — Sale between local parties is not interstate commerce, though the goods are shipped to the buyer from another state.

A sale by a wholesale dealer in paper products to a local dealer in the same state is not a transaction in interstate commerce, because the seller causes the order to be shipped from the manufacturer in another state.

3. Commerce ⬤⟝60(1) — Trade Commission without authority to prohibit discussion of prices by dealers' associations.

While the Trade Commission may prohibit agreements between dealers for the fixing of prices for goods to be sold in interstate commerce, it is without authority to forbid discussion of uniform terms, discounts, and prices by associations of dealers, in the absence of evidence that such discussions result in agreements fixing interstate prices.

4. Monopolies ⬤⟝17(2)—Attempt by combined dealers to induce manufacturers not to sell to certain dealers, or to sell only at fixed prices, is in violation of Anti-Trust Act.

An attempt by an association of dealers to prevent dealers or consumers from buying direct from manufacturers, or to influence manufacturers or wholesalers not to sell to certain dealers, or to sell only at fixed prices, in interstate commerce, though by persuasion only, is an attempt to restrain such commerce in violation of Anti-Trust Act, § 1 (Comp. St. § 8820).

On Petition to Review Order of Federal Trade Commission.

Petition by the Pacific States Paper Trade Association and others to review an order of the Federal Trade Commission. Order reversed in part.

These are petitions to review and set aside certain portions of an order of the Federal Trade Commission. The portions of the

*Certiorari granted 45 S. Ct. 636, 69 L. Ed. —.

order challenged by the several petitions are the following:

"It is ordered that * * * (b) The Spokane Paper Dealers, Portland Paper Trade Association, Paper Trade Conference of San Francisco, Los Angeles Wholesale Paper Jobbers' Association, and their officers and members, or any of them, forever cease and desist from using, directly or indirectly, either separately or in combination, in the making or soliciting of sales in interstate commerce, the price list of any local association, or any price list the prices wherein have been fixed by agreement or understanding between two or more of respondent jobbers or wholesalers, or from compiling, publishing and distributing any joint or uniform list or compilation of prices for use or used or intended to be used in making sales of paper products in interstate commerce.

"(c) Each and all of the respondent local associations, their officers and members, forever cease and desist from entering into or acting under any agreement or understanding, express or implied, among each other or others, which fixes the prices for sales designated and described in the findings herein as 'mill shipments' in carload quantities or less than carload quantities, where the article sold by respondent jobber or wholesaler is one supplied by the manufacturer from a point without the state wherein such jobber or wholesaler is located, or from compiling, publishing, and distributing any joint or uniform compilation of prices for use or intended to be used in making such sales.

"* * * (e) The Seattle-Tacoma Paper Trade Conference, Spokane Paper Dealers, Portland Paper Trade Association, their officers and members, the Pacific States Paper Trade Association and its officers, forever cease and desist, through the medium of meetings of the so-called Northwest Paper Dealers, or in any similar manner, from discussing uniform terms, discounts and prices, agreeing upon prices by resolution or otherwise, or imploying any similar device, which fixes or tends to fix the prices at which paper or paper products shall be sold in interstate commerce; or which is designed to equalize or make uniform the selling prices, terms, discounts, or policies of such respondent jobbers in the sale of paper or paper products in interstate commerce.

"* * * (g) All of respondent associations and their officers and members cease and desist from conspiring, combining, or agreeing among themselves, or with each other or others, or through respondent associa-

tions, or any other organization or association, or in any way whatsoever, to hinder or prevent any wholesaler, jobber, dealer, or consumer from purchasing paper or paper products in interstate commerce directly from the manufacturer or wholesaler thereof or from any one else selling or desiring to sell such products.

"(h) All of respondent associations and their officers and members forever cease and desist from any attempt or effort through such associations or by concert of two or more of their members, or through any other organization or association, to hinder or prevent, by intimidation, coercion, withdrawal or threatened withdrawal of patronage or custom, either express or implied, or promises or agreements to increase such patronage or custom, any person, firm, partnership, or corporation, or any agent or representative thereof, from buying and selling paper or paper products in interstate commerce, from or to whomsoever, or at whatsoever price or terms may be agreed upon between the seller and the purchaser, or by combination or agreement, express or implied, to communicate directly or indirectly with any manufacturer, wholesaler, or retail dealer, or any agent or representative thereof, for the purpose of inducing, coercing, or compelling such manufacturer, wholesaler, or retail dealer, not to sell paper or paper products in interstate commerce to any person, firm, partnership, or corporation whether or not recognized or classified by respondents as a legitimate dealer or otherwise entitled to such purchases."

The desist order was based upon an agreed statement of facts, from which the following appears:

The petitioners represent five local associations of wholesale dealers and jobbers in paper and paper products in the states of Washington, Oregon, and California, and two associations or conferences, made up of two or more of the local associations and one general association, the membership of which is drawn from all five of the local associations. The Seattle-Tacoma Paper Trade Conference is an association of wholesalers and jobbers in paper and paper products, having their places of business in Seattle and Tacoma, Wash., and selling their products in the northwestern portion of that state, and in the territory of Alaska. The Spokane Paper Dealers is an association of dealers and jobbers in paper and paper products, having their places of business in Spokane, and selling their products in the eastern part of Washington, the northern.

part of Idaho, and the western part of Montana. The Portland Paper Trade Association is an association of wholesalers and jobbers in paper and paper products, having their places of business in Portland and neighboring cities, and selling their products in Oregon, the southern part of Washington, and parts of western and southern Idaho. The Paper Trade Conference of San Francisco is an association of wholesalers and jobbers in paper and paper products, having their places of business in San Francisco and neighboring cities, and selling their products in the southern part of Oregon, the northern part of California, and parts of Nevada. The Los Angeles Wholesale Paper Jobbers' Association is composed of wholesalers and jobbers in paper and paper products having their places of business in Los Angeles and San Diego, and selling their products in the southern part of California and parts of Nevada and Arizona. Members of the Portland, Seattle-Tacoma, and the Spokane associations have an informal organization known as the Northwest Paper Dealers, and members of the San Francisco and Los Angeles associations have a similar organization known as the California Paper Trade Association. All five local associations are united in the Pacific States Paper Trade Association, the membership of which is drawn largely from members of the five local associations. Certain large wholesale paper houses doing business on the Pacific Coast have branches in all three states and are members of the five local associations. The members of these several associations do about 75 per cent. of the wholesale paper business of the Pacific Coast, exclusive of roll news print, which is sold directly by the mills to the consumer.

Each local association publishes and distributes among its members uniform price lists to be observed in the sale of wholesale paper and paper products within the state, and from the prices thus fixed the members are not at liberty to depart. This price list of each local association is used by such of its members as do business without the state in which the jobbers or wholesalers comprising the association are located, in quoting prices and making sales, and such price list is habitually carried and used by salesmen of such members when traveling without the state for the purpose of securing business. But no association has any rule or requirement that the price list be observed or carried in quoting prices or making sales without the state, and the quoting of lower prices or the making of sales at different prices is

not deemed an infraction of any rule or trade regulation of which any jobber or wholesaler can complain. Against the practice of using these price lists for sales without the state subdivision (b) of the desist order is directed.

Among the prices fixed by each local association for sales within the states, wherein is located the jobbing center from which the association takes its name, are prices on mill shipments. Mill shipments signify sales upon orders not requiring immediate delivery, which are capable of being filled by shipment from the place of manufacture. Mill shipments are of two kinds: Those in carload lots, and those in less than carload lots. Shipments at less than carload lots are combined in actual shipments from the mill with other paper or paper products, so as to make up a carload, which is shipped by the mill to the jobber or wholesaler as a single consignment. Upon arrival of the shipment at the point of destination, delivery of the shipment is taken by the jobber or wholesaler who in turn delivers to the purchaser the portion or consignment intended for him. Mill shipments in carload lots are made upon bills of lading naming the place where delivery is to be made to the purchaser from the jobber or wholesaler. In some instances the jobber or wholesaler is named in the bill of lading as the consignee to whose order delivery is to be made by the carrier. In other cases the purchaser is named in the bill of lading as such consignee. Where the jobber or wholesaler is named as the consignee, upon arrival of the shipment at the point of destination, he either takes delivery from the carrier and in turn delivers to the purchaser or indorses or delivers the bill of lading to the purchaser, who takes delivery direct from the carrier. In those cases where the purchaser is named in the bill of lading as the consignee, the purchaser takes delivery direct from the carrier upon arrival of the shipment at destination. In all cases of carload shipments, the jobber or wholesaler orders the subject of sale from the mill and pays for the same, and there is no relation between the mill and the purchaser. Mill shipments and prices fixed by the local association for sales by their members include shipments from mills located both within and without the state. Against this practice subdivision (c) of the desist order is directed.

The Northwest Paper Dealers' Association is composed of members of the Portland, Seattle-Tacoma, and Spokane local associations and meets once or twice annually. It

has no formal organization; the presiding officer of each meeting being designated at the time of meeting. Its minutes are distributed to the membership of the three associations. Meetings of this association are from time to time attended by the president and secretary of the Pacific States Paper Trade Association. At such meetings the following subjects were discussed: Uniformity of discounts; the establishment of resale prices by the manufacturers; the guaranty of prices against decline for specified periods; the question of making sales for certain items under the term "close outs"; the advertising by members in newspapers or other periodicals; and prices to be observed by the members of the Seattle-Tacoma Association and the Spokane Association within the state of Washington. This forms the basis of subdivision (e) of the order complained of.

The paper jobbers and wholesalers of the Pacific Coast States have been and are subjected constantly to competition by paper manufacturers selling direct to the retail trade and to large users of paper, and by paper brokers who negotiate or make sales for direct shipment from the mills to the purchaser. Such competition is for large orders not requiring immediate delivery, and which therefore need not be supplied from local stocks on hand, but can be supplied by shipment from the mills. The paper jobbers and wholesalers of the Pacific Coast States strongly oppose and object to such competition, and, both individually and through the Pacific States Trade Association and the local associations named in the complaint, acting through their officers and committees and on behalf of their members, have sought by argument and persuasion and also by promises to increase their purchases from the manufacturers, and by argument and persuasion and such promises combined, to induce paper manufacturers to refuse to sell their products direct to the retail trade, or to users of paper, or to or through brokers. Such efforts have been directed both to inducing the manufacturers not to extend the practice of making sales of the above character and to inducing them to cease selling in the above-described ways to those to whom they were already selling and accustomed to sell. This forms the basis of subdivisions (g) and (h) of the order complained of.

Edward J. McCutcheon, Warren Olney, Jr., and McCutcheon, Olney, Mannon & Greene, all of San Francisco, Cal., Hamblen & Gilbert, of Spokane, Wash., and Chriss A. Bell, of Portland, Or., for petitioners.

W. H. Fuller, Chief Counsel of Federal Trade Commission, of Washington, D. C., and D. N. Dougherty, of San Francisco, Cal., for respondent.

Before GILBERT, HUNT, and RUDKIN, Circuit Judges.

RUDKIN, Circuit Judge (after stating the facts as above). [1] As already stated, the case was submitted to the commission on an agreed statement of facts. Outside of and in addition to the agreed statement, however, the commission made certain findings or deductions of its own. These additional findings will be accepted by the court in so far as they are based upon proper and legal inferences from the facts stipulated, but otherwise they must be disregarded. Thus, in addition to the stipulated facts as to the use made of the price lists adopted by the several local associations, in making sales in other states, the commission found that such use has a natural tendency to limit competition and fix prices in such other states. We may say at the outstart that so much of the desist order as forbids the use of these price lists in combination would be proper, if justified by the facts, but use in combination is neither stipulated nor found. There is no division of territory between the different local associations, but the members of each habitually serve a loosely defined territory, in which the bulk of their business is done, and which is regarded by them as peculiarly within the sphere of their merchandising activities. Such territory is that which is naturally tributary to the jobbing center, where the members of such associations are located and within which jobbing or wholesale dealers so located have an advantage over similar dealers elsewhere in competition with them, by reason of such factors as lower freight rates, nearness of distance, and accustomed trade channels.

The use of a price list of some kind for the information and guidance of salesmen in taking orders and making sales is almost a necessity, and it is going very far to say that the mere use, without combination or agreement, of a particular price list, which the salesmen are not bound to follow, and which differs or may differ from the price lists used by other salesmen in the same locality, has such a tendency to fix prices or limit competition as to bring it within the condemnation of the Anti-Trust Act (Comp. St. §§ 8820–8823, 8827–8830). The principle involved is perhaps more important than the right to use any particular price list, but we do not think that the prohibition is jus-

tified by the stipulated facts or by any proper or legal inferences therefrom.

[2] Again the commission supplemented the stipulated facts as to mill shipments by a finding that such shipments are injected into the channels of interstate commerce and continue in such commerce until delivery to the purchaser, and the inclusion of fixed and uniform prices in the published price lists of the various local associations eliminates price competition in the purchase and sale of these products in interstate commerce. The line of demarcation between interstate commerce and intrastate commerce is not easily defined, nor is it easy to say where the former ends or the latter begins. The question has been many times before the Supreme Court, and it seems there well settled, in tax cases at least, that a sale by a wholesaler or jobber in one state to a purchaser in the same state under circumstances such as are disclosed by this record is not a subject of interstate commerce. Thus, in Ware & Leland v. Mobile County, 209 U. S. 405, 413, 28 S. Ct. 526, 529 (52 L. Ed. 855, 14 Ann. Cas. 1031), the court said:

"When the delivery was upon a contract of sale made by the broker, the seller was at liberty to acquire the cotton in the market where the delivery was required or elsewhere. He did not contract to ship it from one state to the place of delivery in another state. And though it is stipulated that shipments were made from Alabama to the foreign state in some instances, that was not because of any contractual obligation so to do. In neither class of contracts, for sale or purchase, was there necessarily any movement of commodities in interstate traffic, because of the contracts made by the brokers. These contracts are not, therefore, the subjects of interstate commerce, any more than in the insurance cases, where the policies are ordered and delivered in another state than that of the residence and office of the company. The delivery, when one was made, was not because of any contract obliging an interstate shipment, and the fact that the purchaser might thereafter transmit the subject-matter of purchase by means of interstate carriage did not make the contracts as made and executed the subjects of interstate commerce."

So here there were no contractual relations of any kind between the manufacturer and the purchaser from the wholesaler or jobber, and no agreement of any kind between the wholesaler or jobber and the purchaser that the merchandise should be shipped in interstate commerce, or at all. The seller was at liberty to fulfill the contract from merchandise on hand within the state, and adopted the method complained of as a mere matter of convenience, because time and opportunity made delivery in that way feasible and satisfactory. See, also, Banker Bros. v. Pennsylvania, 222 U. S. 210, 32 S. Ct. 38, 56 L. Ed. 168, Public Utilities Commission v. Landon, 249 U. S. 236, 39 S. Ct. 268, 63 L. Ed. 577, and Ward Baking Co. v. Federal Trade Commission (C. C. A.) 264 F. 330.

It is claimed by the respondent that these cases are qualified and explained in Western Union Telegraph Co. v. Foster, 247 U. S. 105, 38 S. Ct. 438, 62 L. Ed. 1006, 1 A. L. R. 1278, Dahnke-Walker Co. v. Bondurant, 257 U. S. 282, 42 S. Ct. 106, 66 L. Ed. 239, and Lemke v. Farmers' Grain Co., 258 U. S. 50, 42 S. Ct. 244, 66 L. Ed. 458. We do not so construe them. In the Western Union Case, the New York Stock Exchange contracted with certain telegraph companies to furnish them continuous stock quotations, to be furnished by them in turn to their subscribers by ticker service, and it was held that the transmission of the quotations remained interstate commerce until they reached their final destination; but there transmission and delivery to the subscriber was a part of the service contracted for. In Dahnke-Walker Co. v. Bondurant and Lemke v. Farmers' Grain Co. it was held that, where goods are purchased in one state for transportation to another, commerce includes the purchase quite as much as the transportation. No doubt a restriction on the purchase or sale of goods which are to become or have been the subject of interstate commerce may be illegal, but before such a result can be declared it must appear that the restriction in some way tends to restrain or monopolize commerce among the states, as in Swift & Co. v. United States, 196 U. S. 375, 25 S. Ct. 276, 49 L. Ed. 518.

No such case is presented here. The contracts in question relate solely to sales within the state by parties within the state, and so far as we can see they do not and cannot affect directly, or even remotely, commerce among the states. Practically all the paper and paper products sold in the Pacific Coast States has been the subject of interstate commerce. The commission apparently concedes that it is without power to forbid or condemn agreements fixing prices within the state where delivery is to be made from stocks within the state, but it asserts the power in this particular instance merely because of the time, place, and mode of de-

livery. The distinction thus sought to be made is subtle to say the least.

[3] As already stated, paragraph (e) of the order forbids the discussion of uniform terms, discounts, and prices by the Northwest Paper Dealers and the Pacific States Paper Trade Association, their officers and members, their agreeing upon prices by resolution or otherwise, or the employing of any similar device, which fixes or tends to fix the price at which paper or paper products shall be sold in interstate commerce. On first reading, it might seem that the qualifying phrase, "which fixes or tends to fix the prices at which paper or paper products shall be sold in interstate commerce," applies to the discussion of terms, discounts, and prices, as well as to any similar device, but correctly speaking it does not. Furthermore, the petitioners contend that the order, by its terms, prohibits any discussion whatever of these subjects. The commission accepts that view and seeks to uphold the order in all its breadth.

In this respect we think the order goes too far. As said by the Supreme Court in Federal Trade Commission v. Sinclair Refining Co., 261 U. S. 463, 43 S. Ct. 450, 67 L. Ed. 746: "The powers of the Commission are limited by the statutes. It has no general authority to compel competitors to a common level, to interfere with ordinary business methods or to prescribe arbitrary standards for those engaged in the conflict for advantage called competition. The great purpose of both statutes was to advance the public interest by securing fair opportunity for the play of the contending forces ordinarily engendered by an honest desire for gain. And to this end it is essential that those who adventure their time, skill and capital should have large freedom of action in the conduct of their own affairs."

Nor was it the purpose of the statutes to reduce trade organizations to the status of mere social clubs, or to restrict the conversation of members to mere idle gossip. United States v. Southern Wholesale Grocers' Ass'n (D. C.) 207 F. 434. The stipulated facts state the subjects discussed at these meetings, without more. What was said we are not informed and so far as the record discloses, the discussion may have resulted in a disagreement instead of an agreement. What is here said, of course, has no reference to the resolution fixing the price for cutting, but beyond an agreement on this single item the record is entirely silent. Our attention has been directed to numerous cases in which injunctions as broad as this have been sustained, but in all such cases agreements in restraint of trade were found to exist, and in order to prevent a repetition or recurrence of the evil the courts were warranted in forbidding acts which in and of themselves would not justify injunctive or other relief. No doubt, discussions at such meetings which tend to monopolize trade or fix prices in interstate commerce come within the prohibition of the statute, but neither court nor commission is justified in presuming the unlawful purpose without proof. The discussions in question may have had the tendency claimed, and such may have been their express object, but no such tendency or purpose appears from the stipulated facts.

[4] Paragraph (g) of the order is directed against conspiracies and combinations to hinder or prevent any wholesaler, jobber, dealer, or consumer from purchasing paper or paper products in interstate commerce directly from the manufacturer or wholesaler thereof, or from any one else selling or desiring to sell such products, and paragraph (h) against like conspiracies and combinations to hinder or prevent by intimidation, coercion, withdrawal or threatened withdrawal of patronage or custom, either express or implied, or by promises or agreements to increase such patronage or custom, any firm, partnership, or corporation, or representative thereof from buying or selling paper and paper products in interstate commerce from or to whomsoever, or at whatsoever prices or terms may be agreed upon between the seller and the buyer, or by combination or agreement, express or implied, to communicate, directly or indirectly, with any manufacturer, wholesaler, or dealer, or representative thereof, for the purpose of inducing, coercing, or compelling such manufacturer, wholesaler, or retail dealer not to sell paper or paper products in interstate commerce to any firm, partnership, or corporation, whether or not recognized or classified by the respondents as a legitimate dealer or otherwise entitled to such purchases.

The petitioners concede that they have no right, in combination, to resort to intimidation, or coercive measures, to enforce their demands, such as blacklisting or boycotting, but they do insist that they have a right to resort to peaceable persuasion. We are not convinced, however, that there is not an element of coercion in a demand made upon wholesalers by the representatives of dealers in 75 per cent. of the paper and paper products in a number of the states. Furthermore, as said by the Supreme Court in Duplex

Printing Co. v. Deering, 254 U. S. 443, 41 S. Ct. 172, 65 L. Ed. 349, 16 A. L. R. 196:

"It is settled by these decisions that such a restraint produced by peaceable persuasion is as much within the prohibition as one accomplished by force or threats of force; and it is not to be justified by the fact that the participants in the combination or conspiracy may have some object beneficial to themselves or their associates which possibly they might have been at liberty to pursue in the absence of the statute."

For the foregoing reasons, paragraphs (b) and (c) of the order are reversed, paragraph (e) is reversed in so far as it forbids the mere discussion of uniform terms, discounts, and prices, and as to the remaining paragraphs the petitions are denied.