16 So.2d 247

KOHLMEYER, NEWBURGER & CO v. COOPER, Collector of Revenue, and five other cases.

Nos. 37171–37176.

Nov. 8, 1943.

Rehearing Denied Dec. 13, 1943.

Appeal Dismissed March 13, 1944.
See 64 S.Ct. 782.

John B. Smullin and Stephen B. Rodi, both of Baton Rouge, for defendants and appellants.

Lemle, Moreno & Lemle, of New Orleans, for plaintiffs and appellees.

PONDER, Justice.

In these consolidated cases the plaintiffs are seeking to recover from the Collector of Revenue taxes paid by them in pursuance to Act No. 24 of 1934, as amended by Act No. 11 of the 2nd E. S. of 1935, over their protest. Upon trial, the lower court held the statute unconstitutional and gave judgment ordering the return of the taxes to the plaintiffs. The Collector of Revenue has appealed from this judgment.

The present suits were filed in accordance with the provisions of Act No. 16 of 1934 (2nd E. S.) § 2, as amended by Act No. 23 of 1935 (2nd E. S.) § 1, and Act No. 330 of 1938 § 2, Dart's Stats. § 8444.2, authorizing aggrieved persons the right to sue for any taxes paid by them under protest.

The plaintiffs contend that the taxes were collected under an unconstitutional statute. The basis of their attack on the constitutionality of the statute is stated in their brief as follows:

(1) "That the tax is a direct burden on interstate commerce in cotton.

"Plaintiff further contends, conceding the power of the State of Louisiana to tax those contracts which do not result in the delivery of cotton moving in interstate commerce, the statute is unconstitutional as the tax is imposed indiscriminately on all contracts for the sale of cotton regardless of whether or not such cotton moves in interstate commerce.

(2) "That even if the tax is not a direct burden upon the cotton moving in interstate commerce, yet these contracts are instrumentalities of interstate commerce and so cannot be taxed because such a tax is an unconstitutional interference with interstate commerce."

All of the plaintiffs are partnerships with their domiciles in the City of New Orleans except the American Cotton Cooperative Association, a corporation organized under the laws of the State of Delaware, having its regular office and principal place of business in the City of New Orleans. The plaintiffs are members of the New Orleans Cotton Exchange and are engaged in buying and selling cotton by contracts on the New Orleans Cotton Exchange for future delivery.

The cotton contracts for future delivery in dispute were executed and entered into at the New Orleans Cotton Exchange with the provision that the cotton, represented by a warehouse receipt, is to be delivered at some specific future date at New Orleans, Louisiana, Galveston, Texas or Houston, Texas, at the option of the seller.

The statute under attack, Act No. 24 of 1934, as amended by Act No. 11 of the 2nd E. S. of 1935, provides in sections 1 and 2, as follows:

"Section 1. Be it enacted by the Legislature of Louisiana, That upon each sale of any cotton for future delivery made at, on or in any exchange, board of trade, or

similar institution or place of business, every person, firm, association or corporation, domestic or foreign, selling cotton shall, in addition to all other taxes and licenses levied and assessed in this State, pay a license tax, for the privilege of engaging in such business in this State, of two cents (2¢) for each One Hundred ($100.00) Dollars involved in the price of such cotton so sold, and for each additional One Hundred ($100.00) Dollars or fractional part thereof in excess of One Hundred ($100.00) Dollars, two cents (2¢), which price shall be computed, at the rate per pound, on the actual weight of the cotton so sold, or if the sale is effected without giving the weight, or where the weight is unknown, or where the contract of sale specified, in bales, the quantity of cotton transferred, but does not give the weight thereof, then each bale involved in the sale shall be deemed to weigh Five Hundred Pounds (500 lbs.) for the purpose of computing the total price of sale, to be used in ascertaining the amount of the license tax, at two cents (2¢) for each One Hundred Dollars ($100.00) of sale price, and for each additional One Hundred ($100.00) Dollars or fractional part thereof in excess of One Hundred Dollars, two cents (2¢).

"Section 2. It is the intention of this Act to levy, in addition to other taxes and licenses levied in this State, a license tax on every person, firm, association or corporation engaged in the business described in Section 1, for the privilege of engaging in such business carried on in this State."

The statute in controversy was repealed by Act No. 35 of 1940. However, the repealing act provides that licenses or taxes due under the provisions of Act No. 24 of 1934, as amended, are not waived and that the Collector of Revenue shall collect such licenses or taxes in the manner provided in Act No. 24 of 1934, as amended.

There is no dispute that the licenses or taxes accrued and were paid prior to the effective date of the repealing statute.

The record contains expert testimony as to the effect that contracts of this nature will have on interstate commerce. The testimony, although it might be somewhat persuasive is not controlling. The plaintiffs also take the position that Congress and the courts regard contracts of this nature as contracts in interstate commerce and subject to the power of federal taxation.

The statute in dispute levies no tax on the New Orleans Cotton Exchange. The New Orleans Cotton Exchange is not a party to this suit and is a corporation entirely separate and distinct from the partnerships or corporation of the plaintiffs involved herein. The plaintiffs are connected with the New Orleans Cotton Exchange only insofar as they are members and engaged in buying and selling such contracts on the floor of the Exchange. Consequently, the Federal Commodity Exchange Act and the case of Board of Trade v. Olsen, 262 U.S. 1, 43 S.Ct. 470, 67 L. Ed. 839, are not pertinent.

The sole question presented in this controversy is whether or not the State has the power to levy the tax on the contracts involved.

There is no question that the State does not have the power to impose a

tax on an instrumentality of interstate commerce. Where intrastate ·transactions are so related to interstate transactions that the government of one involves the control of the other, the State would have no authority to tax such transactions. Meyer v. Wells, Fargo & Co., 223 U.S. 298, 32 S.Ct. 218, 56 L. Ed. 445; Houston, E. & W. T. R. Co. v. United States, 234 U. S. 342, 34 S.Ct. 833, 58 L.Ed. 1341; Cooney v. Mountain States Telephone & Telegraph Co., 294 U.S. 384, 55 S.Ct. 477, 79 L.Ed. 934.

■ However, transactions purely local are subject to state taxation. Eastern Air Transport, Inc., v. South Carolina Tax Commission, 285 U.S. 147, 52 S.Ct. 340, 76 L.Ed. 673; Edelman v. Boeing Air Transport, 289 U.S. 249, 53 S.Ct. 591, 77 L.Ed. 1155; Chassaniol v. City of Greenwood, 291 U.S. 584, 54 S.Ct. 541, 78 L. Ed. 1004; Coverdale v. Arkansas-Louisiana P. L. Co., 303 U.S. 604, 58 S.Ct. 736, 82 L. Ed. 1043; Parker v. Brown, 317 U.S. 341, 352, 63 S. Ct. 307, 314.

■ We realize that Congress has the power to regulate interstate commerce and transactions, enterprises and industries which affect such commerce. N. L. R. B. v. Jones & Laughlin Steel Corp., 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893, 108 A.L.R. 1352; N. L. R. B. v. Fruehauf Trailer Co., 301 U.S. 49, 57 S.Ct. 642, 81 L.Ed. 918, 108 A.L.R. 1352; Consolidated Edison Co. of New York, Inc., v. N. L. R. B., 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126, 127; United States v. Darby, 312 U.S. 100, 61 S.Ct. 451, 85 L.Ed. 609, 132 A.L.R. 1430. However, we are not presented in this case with a question of regulation.

■ In line with the decisions of the Supreme Court of the United States, it appears to us that transactions between the members of an exchange of the nature involved here are purely local in their character. The contracts do not call for any interstate movement. If any interstate shipments are made, they are not because of the contractual obligation but by a chance happening which, in our opinion, could not have the effect of converting these local agreements into subjects of interstate commerce.

The Supreme Court of the United States in the case of Coverdale v. Arkansas-Louisiana P. L. Co., 303 U.S. 604, 58 S.Ct. 736, 739, 82 L.Ed. 1043, stated:

"Privileges closely connected with the commerce may be regarded as distinct for purposes of taxation. So, local privilege taxes on storage in transit, compressing or dealing in cotton, already moving in its interstate journey from plantation to mill, are validated as imposed upon operations in connection with a commodity withdrawn from the transportation movement. Federal Compress & Warehouse Co. v. McLean, 291 U.S. 17, 21, 54 S.Ct. 267, 268, 78 L.Ed. 622 [626]; Chassaniol v. [City of] Greenwood, 291 U.S. 584, 54 S.Ct. 541, 78 L.Ed. 1004; cf. State of Minnesota v. Blasius, 290 U.S. 1, 54 S.Ct. 34, 78 L.Ed. 131. And similar taxes are upheld for the privilege of mining ores or producing gas, notwithstanding the 'practical continuity' of the taxed productive operation and the interstate movement. Oliver Iron Min. Co. v. Lord, 262 U.S. 172, 43 S.Ct. 526, 67 L.Ed. 929; Hope Natural Gas Co. v. Hall, 274 U.S. 284, 47 S.Ct. 639, 71 L.Ed. 1049.

"To determine whether this challenged state tax enactment is invalid as an interference with interstate commerce under the decisions of this Court, the connection of the privilege taxed with interstate commerce has been considered. Other factors also show that the tax here does not interfere with interstate commerce. The tax is without discrimination in form or application as between inter and intra state commerce and it cannot be imposed by more than one state. The course of interstate commerce is clogged by taxes designed or applied so as to hamper its free flow. Section three, however, bearing equally on all use, is only complementary to the taxes of sections 1 and 2. Henneford v. Silas Mason Co., 300 U.S. 577, 584, 57 S.Ct. 524, 527, 81 L.Ed. 814 [819]. It bears generally on all use of power and is not discriminatory. It obviously adds to the cost of the interstate commerce. But increased cost alone is not sufficient to invalidate the tax as an interference with that commerce. Western Live Stock v. Bureau of Revenue, 303 U.S. at 250, 58 S.Ct. 546, 82 L.Ed. 823 [115 A.L.R. 944], supra."

In the case of Eastern Air Transport, Inc., v. South Carolina Tax Commission, 285 U.S. 147, 52 S.Ct. 340, 76 L.Ed. 673, the plaintiffs sought to enjoin the collection of a gasoline tax on the ground that the gasoline was to be used in planes engaged in interstate commerce. The court held that a tax upon local sales in such cases has never been regarded as imposing a direct burden on interstate commerce and has no greater nor different effect upon it than a general property tax. Also, see Edelman v. Boeing Air Transport, supra.

A local privilege tax on money and exchange brokers engaged in buying and selling foreign bills of exchange was upheld in the case of Nathan v. State of Louisiana, 8 How. 73, 12 L.Ed. 993.

In the case of Parker v. Brown, 317 U.S. 341, 352, 63 S.Ct. 307, 314, 318, the Supreme Court of the United States in upholding the raisin marketing program adopted under the California Prorate Act had this to say:

"This Court has repeatedly held that the grant of power to Congress by the Commerce Clause did not wholly withdraw from the states the authority to regulate the commerce with respect to matters of local concern, on which Congress has not spoken. Minnesota Rate Cases (Simpson v. Shepard), 230 U.S. 352, 399, 400, 33 S. Ct. 729, 739, 740, 57 L.Ed. 1511, 48 L.R.A., N.S., 1151, Ann.Cas.1916A, 18; South Carolina State Highway Dept. v. Barnwell Bros., 303 U.S. 177, 187 et seq., 625, 58 S.Ct. 510, 514 et seq., 82 L.Ed. 734; People of State of California v. Thompson, 313 U.S. 109, 113, 114, 61 S.Ct. 930, 932, 933, 85 L. Ed. 1219, and cases cited: Duckworth v. [State of] Arkansas, 314 U.S. 390, 62 S. Ct. 311, 86 L.Ed. 294, 138 A.L.R. 1144. A fortiori there are many subjects and transactions of local concern not themselves interstate commerce or a part of its operations which are within the regulatory and taxing power of the states, so long as state action serves local ends and does not discriminate against the commerce, even though the exercise of those powers may materially affect it. * * *

"A state is also free to license and tax intrastate buying where the purchaser ex-

pects in the usual course of business to re-sell in interstate commerce. Chassaniol v. [City of] Greenwood, 291 U.S. 584, 54 S. Ct. 541, 78 L.Ed. 1004. And no case has gone so far as to hold that a state could not license or otherwise regulate the sale of articles within the state because the buy-er, after processing and packing them, will, in the normal course of business, sell and ship them in interstate commerce.

"All of these cases proceed on the ground that the taxation or regulation in-volved, however drastically it may affect in-terstate commerce, is nevertheless not pro-hibited by the Commerce Clause where the regulation is imposed before any operation of interstate commerce occurs."

The question raised in these consolidated cases has been passed on in the cases of Ware & Leland v. State of Alabama, 209 U.S. 405, 28 S.Ct. 526, 52 L.Ed. 855, 14 Ann.Cas. 1031, and Moore v. New York Cotton Exch., 270 U.S. 593, 46 S.Ct. 367, 70 L.Ed. 750, and the contracts were held to be local transactions subject to state taxation. The plaintiffs contend that the discussion of these contracts in these two cases is mere obiter dictum. We cannot agree with this position for the reason that the contracts were directly involved and passed on. We quote from the pertinent part of the opinions handed down in these cases.

It is stated in the case of Ware & Leland v. State of Alabama, supra [209 U.S. 405, 28 S.Ct. 529, 52 L.Ed. 855]:

"But how stands the present case upon the facts stipulated? The plaintiffs in er-ror are brokers who take orders and trans-mit them to other states for the purchase and sale of grain or cotton upon specula-tion. They are, in no just sense, common carriers of messages, as are the telegraph companies. For that part of the transac-tions, merely speculative and followed by no actual delivery, it cannot be fairly con-tended that such contracts are the subject of interstate commerce; and concerning such of the contracts for purchases for future delivery as result in actual delivery of the grain or cotton, the stipulated facts show that, when the orders transmitted are received in the foreign state, the property is bought in that state and there held for the purchaser. The transaction was thus closed by a contract completed and executed in the foreign state, although the orders were received from another state. When the delivery was upon a contract of sale made by the broker, the seller was at liberty to acquire the cotton in the market where the delivery was required or elsewhere. He did not contract to ship it from one state to the place of delivery in another state. * * *

"These contracts are not, therefore, the subjects of interstate commerce any more than in the insurance cases, where the pol-icies are ordered and delivered in another state than that of the residence and office of the company. The delivery, when one was made, was not because of any contract obliging an interstate shipment, and the fact that the purchaser might thereafter transmit the subject-matter of purchase by means of interstate carriage did not make the contracts as made and executed the subjects of interstate commerce."

It is also stated in the case of Moore v. New York Cotton Exch., supra [270 U.S. 593, 46 S.Ct. 369, 70 L.Ed. 750]:

"* * * The New York Exchange is engaged in a local business. Transactions between its members are purely local in their inception and in their execution. They consist of agreements made on the spot for the purchase and sale of cotton for future delivery, with a provision that such cotton must be represented by a warehouse receipt issued by a licensed warehouse in the Port of New York and be deliverable from such warehouse. Such agreements do not provide for, nor does it appear that they contemplate, the shipment of cotton from one state to another. If interstate shipments are actually made, it is not because of any contractual obligation to that effect; but it is a chance happening which cannot have the effect of converting these purely local agreements or the transactions to which they relate into subjects of interstate commerce. Ware & Leland Co. v. Mobile County, 209 U.S. 405, 412, 413, 28 S.Ct. 526, 52 L.Ed. 855, 14 Ann.Cas. 1031. The most that can be said is that the agreements are likely to give rise to interstate shipments. This is not enough. Engel v. O'Malley, 219 U.S. 128, 139, 31 S.Ct. 190, 55 L.Ed. 128. See also Hopkins v. United States, 171 U.S. 578, 588, 590, 19 S.Ct. 40, 43 L.Ed. 290; Anderson v. United States, 171 U.S. 604, 615, 616, 19 S.Ct. 50, 43 L.Ed. 300, [305, 306]."

We are of the opinion that the pronouncements in the cases of Ware & Leland v. State of Alabama, supra, and Moore v. New York Cotton Exch., supra, are controlling of the issues herein.

For the reasons assigned, the judgment of the lower court is reversed and set aside; all of the plaintiffs' suits are dismissed at their cost.

O'NIELL, C. J., is of the opinion that, inasmuch as the license tax levied by Act No. 24 of 1934, as amended by Act No. 11 of the 2nd Extra Session of 1935, is levied or computed separately on each transaction, the tax does not violate the commerce clause except in cases where it is levied or computed upon an interstate transaction.