(118 So. 253)

## BLAN, State Auditor, v. HOLLYWOOD REALTY CO. (3 Div. 540.)

Court of Appeals of Alabama. Oct. 26, 1926.

Rehearing Denied Feb. 1, 1927. Reversed after Mandate. June 5, 1928.

Further Rehearing Denied June 26, 1928.

Rushton, Crenshaw & Rushton, of Montgomery, and Dudley A. Wilson, of New York City, for appellee.

See, also, Allgood v. Hollywood Realty Co., ante, p. 537, 118 So. 253.

Charlie C. McCall, Atty. Gen., and A. A. Evans, Asst. Atty. Gen., and Chilton & McCoy, of Montgomery, for appellant.

RICE, J. The distinguished Assistant Attorney General, representing the appellant in this proceeding, after the remandment of this cause to this court by the Supreme Court, has prepared a statement of the issues involved together with the law applicable and conclusions to be necessarily drawn, with which we

are in full accord. Hence we quote and adopt as our opinion his excellent treatise on the questions, as follows:

"The appellee, Hollywood Realty Company, a foreign corporation, applied to Hon. D. W. Crosland, judge of probate of Montgomery county, Ala., for license under Schedule 102 of section 361 of the Revenue Act 1919. This schedule reads as follows:

" 'Every person, firm or corporation who shall. or who offers to sell in this state any lots or lands situated in another state, or who offers to sell at auction or advertises any auction sale of town lots, or the sale by auction or otherwise, of lots in any sub-division of lands, situated in another state, shall pay an annual license to the state of five hundred dollars. Before any license shall be issued under this schedule, the party desiring to obtain such license shall cause to be recorded at his own expense on the deed records in the office of the probate judge of the county in which the license is applied for, a full description of the lands or lots so offered for sale, together with the location of same, and if the lands have been divided into lots, shall at his own expense file a map of said subdivision, which shall be recorded upon the plat book of the county in the office of the judge of probate, and reference to said plat book shall be made on the deed records and noted in the general, direct and reverse index of said county. The applicant shall also file and cause to be recorded, at his own expense, in the office of the probate judge, evidence of the ownership of the vendor of said lands or lots, the character and extent of such ownership, together with a statement of any and all mortgages or other liens which may exist thereon.'

"On payment by said company to said judge of probate of the amount required, the said judge of probate issued to said company the license provided for by said Schedule 102.

"Subsequently, said Hollywood Realty Company made application to said judge of probate to have refunded to it the $500 so paid to the state, alleging in its application that it had paid said money to the said judge of probate through a mistake or error on the part of said judge of probate, in that said Schedule 102 was unconstitutional and void, and in that it had already paid to the judge of probate of Jefferson county $500 for a state license under said Schedule 102, which, petitioner alleges, is not required to be paid in the state but once.

"On consideration of the application, the said judge of probate found 'the facts stated in said petition to be true and that the statute of the state of Alabama embodied in Schedule 102 of section 361 of the Revenue Act of Alabama contravenes the provisions of the Constitution of the United States, as well as of the Constitution of the state of Alabama, and that the license tax imposed by said law is therefore illegal and void.' Said judge of probate thereupon issued a certificate in the manner provided by section 376 of the Revenue Act 1919 (Acts 1919, p. 445), where money is paid to the judge of probate for license taxes through a mistake or error on the part of the judge of probate. The certificate was addressed to the state auditor, as provided by section 376, and showed on its face, the finding of the judge of probate of the facts, which, in the opinion of the judge of probate, constituted the mistake or error on the

part of the judge, through which said $500 was paid by the said Hollywood Realty Company.

"On presentation by the Hollywood Realty Company, of said certificate to W. B. Allgood, as state auditor, he was of the opinion that it was not 'such a certificate as would enable him to draw his warrant' for the refund, by the state treasurer, of said $500, under the provisions of sections 375 and 376 of the Revenue Act 1919 (Acts 1919, p. 445), and refused to issue such warrant. Thereupon the said Hollywood Realty Company filed its petition in the circuit court of Montgomery county asking for a writ of mandamus to be directed to W. B. Allgood, as state auditor, requiring him to issue his warrant for the refund of said $500, as directed by said certificate, under the provisions of said section 376 of the Revenue Act 1919. Said petition for writ of mandamus had attached, as exhibit thereto and as part thereof, copy of the application of the Hollywood Realty Company to the said probate judge to have refunded to it the amount so paid, also a copy of the certificate of said judge of probate directed to said W. B. Allgood, as state auditor, which certificate the said auditor considered was not 'such a certificate' as would enable him to draw his warrant on the state treasurer for such refund, and therefore refused to issue the warrant directed by the certificate.

"The petition was duly demurred to by the defendant, and, on the trial in the circuit court, the demurrer was overruled by that court. The defendant declined to plead further, and there was judgment for petitioner, and the peremptory writ of mandamus ordered as prayed for in the petition. From this judgment and order, the defendant appealed to this court and assigned as error the judgment of the trial court overruling the demurrer and also the judgment of the trial court in giving judgment for petitioner and awarding the peremptory writ of mandamus.

"In an opinion formerly handed down, this court (118 So. 258[1]) affirmed the judgment of the lower court on the apparent authority of Lovelady v. Loveman, Joseph & Loeb, 191 Ala. 96, 68 So. 48. The term of office of the defendant, W. B. Allgood, having expired, the suit abated and was thereupon revived in the name of S. H. Blan, as auditor of the state of Alabama, his successor in office.

"On application to the Supreme Court by the appellant, the Supreme Court awarded the writ of certiorari, reversed the said decision of this court, and remanded the cause to this court for further proceedings in accordance with the views expressed by the Supreme Court.

"In said opinion handed down by the Supreme Court (118 So. 257) in response to the application for writ of certiorari, it quoted with approval, as applicable to the case under consideration, from the case of Board of Revenue v. Southern Bell Tel. & Tel. Co., 200 Ala. 532, 76 So. 858, in which the Supreme Court, speaking of the extent and meaning of the holding in said Lovelady Case, said:

" 'We do not think that the court held or intended to hold * * * that a certificate by the probate judge as to every fact was conclusive on the Board of Revenue so as to require the issuance of a warrant upon a certificate which showed on its face that the tax was not governed

[1] Ante, p. 537.

540

or controlled by the statute in question. It was simply held that when a proper certificate was presented the Board had no discretion in the matter, that is, a certificate involving a finding authorized by the statute; only such certificates as are authorized by the statute are conclusive on the Board of Revenue, and not one certifying that a tax was governed by the Act when it showed upon its face that it was not.'

"In speaking of this case, the Supreme Court, in the opinion handed down, says:

" 'So far as the question of finality of the certificate is concerned, a "proper case" is not presented.'

"The matters found by the judge of probate to be true, as shown by the certificate presented to the auditor, which made it an error or mistake, on his part, in receiving the money in question, are substantially as follows:

"(1) That the provision of Schedule 102 requiring a party desiring to obtain a license under said schedule, to record, at his own expense, etc., as a condition precedent to issuing the license, is unconstitutional, in that said provision of said act is not clearly indicated by the title of said act.

"(2) That petitioner had previously paid to the judge of probate of Jefferson county the sum of $500 as a license tax for the state of Alabama required by said schedule, and that said schedule does not require the state license to be paid but once.

"(3) That that part of said Schedule 102 imposing a license tax of $500 for the state is unconstitutional and void, for the following reasons:

"(a) That it violates subdivision 3 of section 8 of article 1 of the Constitution of the United States, which confers upon the Congress of the United States the power to regulate commerce with foreign nations and among the several states, etc.

"(b) That it violates the provisions of section 2 of article 4 of the Constitution of the United States, under which the citizens of each state are entitled to all privileges and immunities of citizens in other states, in that by Schedule 101 of section 361 of Revenue Act 1919 (Acts 1919, p. 430), a license tax for very much less amount of money is imposed upon such as engage in buying, selling, or renting real estate, on commission, when such real estate is situated in this state, than is imposed by said Schedule 102 upon those selling or offering to sell, in this state, lands situated in another state.

"(c) That it violates section 1 of the Fourteenth Amendment to the Constitution of the United States, in that it denies to petitioner the equal protection of the laws, in that it requires a much greater amount of money for a license under said Schedule 102 than is required under said Schedule 101.

"(d) That it violates the provisions of the Constitution of the state of Alabama, in that it requires a much greater amount of money for a license under said Schedule 102 than is required under said Schedule 101, thereby making an arbitrary and discriminatory classification.

"The demurrer to the petition challenges the sufficiency or correctness in law of each of the findings of the judge of probate, upon which the certificate to defendant was issued, and upon which the circuit court gave judgment in favor of petitioner.

"We will now consider the sufficiency or correctness in law of each of these findings seriatim.

"The condition precedent, stated in said schedule, as to recording map, etc., is an integral part of said schedule, and said schedule is an integral part of said Revenue Act 1919, and said Revenue Act 1919, is a 'general revenue bill.' General revenue bills are specifically excepted, in section 45 of the Constitution of the state of Alabama, from the general requirement of said section that 'each law shall contain but one subject, which shall be clearly expressed in its title.' Furthermore, section 424 of said Revenue Act 1919 (Acts 1919, p. 450) provides that, 'if any section, clause, provision or portion of this act shall be held to be invalid or unconstitutional by any court of competent jurisdiction such holding shall not affect any other section, clause or provision or portion of this act which is not in and of itself unconstitutional.' Each of the two foregoing provisions—one in the Constitution and the other in said Revenue Act—render the first finding herein stated untenable.

"Section 363 of said Revenue Act (Acts 1919, pp. 440 and 441) provides, with reference to licenses issued by the judge of probate, except as otherwise provided, that a license issued 'shall set forth and specify the name of the person, firm, or corporation applying therefor, the business or act which it is proposed to carry on or do thereunder, the name of the street or location where it is proposed to carry on the same, if such location shall be in a city or town and have a street number, and if not, then the location and amount paid for such license, and the time for which it is issued; * * * and such license shall not be transferable, nor shall it entitle the holder thereof to carry on any other business or do any other act than that named therein, nor at any other location than that therein specified.'

"With reference to said Schedule 102 nothing is provided otherwise than is stated in the part of said section 363 above quoted. From this it clearly appears that a license issued by the judge of probate of Jefferson county, under the provisions of said Schedule 102, does not authorize doing the business so licensed in Montgomery county nor elsewhere than at the location stated in the license issued by the judge of probate of Jefferson county. The provisions of said Schedule 363 quoted clearly show that the second finding enumerated is untenable.

"Reason (a) for the third finding enumerated is untenable in that real estate is not a subject of interstate commerce. 12 Corpus Juris, p. 19, § 18.

"Reason (b) for the third finding is untenable, in that neither said Schedule 102 nor said Schedule 101 makes any discrimination between citizens of this state and citizens of another state. Citizens in this state engaged, in this state, in selling lands lying outside of this state, must take out license under said Schedule 102, just as do citizens of another state engaged in such business in this state. Also citizens of another state or county engaged, in this state, in selling, on commission, lands lying in this state, as well as citizens of this state, may have the legal privilege of doing so by taking out license under said Schedule 101. Neither is there any discrimination between citizens of

this state and citizens of another state made by either of said schedules, or both of them, on account of the ownership of the lands being sold. No matter who owns the land being sold, whether citizens of this state or citizens of another state, if the land lies in this state, the real estate agent selling such land, in this state, must take out a license under said Schedule 101, and, if the land lies out of this state, the real estate agent selling said land, in this state, must take out license under Schedule 102. So there is no discrimination between persons on account of diversity of citizenship.

██ "We shall next consider together reasons (c) and (d) for the third finding, as the validity of each of said reasons depends upon the admissibility of the classifications under the said two schedules.

"Is there a difference between the business authorized under Schedule 101 and that authorized under Schedule 102 upon which the Legislature could validly make the classification?

"Under Schedule 101, the real estate dealer is confined in his selling to lands lying in the state of Alabama; under this schedule, a person cannot sell lands lying outside of the state of Alabama. Under Schedule 102, a person may, in the state of Alabama, sell, to another person, lands lying outside of the state of Alabama, but cannot sell lands lying in the state of Alabama. The cleavage between the two businesses is clear as to what lands may be dealt in under each schedule; there is no uncertainty about that part of either business. Is there anything else to distinguish between the two businesses? It is evident that the real estate agent, whether he be resident or nonresident of the state of Alabama—citizen or noncitizen of the state of Alabama—engaged in the business of selling in Alabama, lands lying outside the state of Alabama, is engaged primarily in the business of selling such lands to resident citizens of Alabama; that is his purpose. When a resident citizen of Alabama deals with such an agent, he finds quite a difference in the matters so encountered from what he finds in dealing with a real estate agent acting under license issued under Schedule 101. Usually, he is purchasing land governed in the manner of transfer of title, and, in many other ways, by laws entirely unfamiliar to him and to his legal adviser. Usually, he is buying lands lying at a considerable distance from the office where the transaction takes place, which lands the purchaser has never seen. The purchaser relies almost entirely upon statements made by such agent. On the other hand, the real estate agent, acting under license issued under Schedule 101, has, as a rule, the real estate to be sold near at hand, and exhibits same to the purchaser before the purchaser will buy; the purchaser and his legal adviser are familiar with the law of the manner of transfer of title and the laws which protect him in the ownership and use of such property; in the extent of taxation of such property, and possibly other matters about which he is ignorant in the other case. The experience of many citizens of this state amply exemplifies the difference between the two businesses. It was undoubtedly such experiences which brought about the enactment of Schedule 102. Besides, a person may, under Schedule 102, sell lands lying in 47 states of the United States,

while under Schedule 101 he can sell lands lying in the state of Alabama only.

"It may be true that cases of sales in the two businesses may be imagined which are very similar; for instance, lands lying near the border line of two states. But these cases are comparatively rare, and cannot be adduced to destroy a classification, which, in general does not have such similarity. Even here the different laws governing obtain.

"For the reasons just stated, as between Schedules 101 and 102, the basis for classification is clear, and such classification is not arbitrary or discriminatory. Schedule 102 does not deny to petitioner the equal protection of the laws. Schedule 102 is a valid and constitutional enactment by the Legislature of Alabama."

We are therefore of opinion that the circuit court erred in its judgment overruling the demurrer to the petition and in granting to the petitioner the peremptory writ of mandamus. The petitioner's alleged rights being without foundation in fact or law, the judgment of the circuit court will be reversed and the petition for the writ of mandamus dismissed.

Reversed and rendered.

