## TOOTAL BROADHURST LEE CO., Limited, v. COMMISSIONER OF INTERNAL REVENUE.

Circuit Court of Appeals, Second Circuit.
January 7, 1929.

No. 97.

240

Satterlee & Canfield, of New York City (F. Morse Hubbard and Lloyd F. Thanhouser, both of New York City, of counsel), for petitioner.

Mabel Walker Willebrandt, Asst. Atty. Gen., Sewall Key and Morton P. Fisher, Sp. Asst. Attys. Gen. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Thomas P. Dudley, Jr., Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for respondent.

Before MANTON, L. HAND, and AUGUSTUS N. HAND, Circuit Judges.

MANTON, Circuit Judge. The petitioner, a British corporation having an office in New York City, manufactured in England cotton goods which it sold in the United States. During the fiscal year ending June 30, 1920, there was derived from such merchandise, so manufactured and sold, income amounting to $246,168.71. The question presented by this petition is whether the income derived by this foreign corporation from sales in the United States of this merchandise is income from sources within the United States under section 233(b) of the Revenue Act of 1918 (40 Stat. 1077), which provides that "in the case of a foreign corporation gross income includes only the gross income from sources within the United States, * * * and including all amounts received (although paid under a contract for the sale of goods or otherwise) representing profits on the manufacture and disposition of goods

within the United States." Section 213 of the same act (40 Stat. 1065) provides that "the term 'gross income' includes gains, profits, and income derived from salaries, wages, or compensation for personal service * * * of whatever kind and in whatever form paid, or from * * * trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever." The Board of Tax Appeals held that the income was from sources within the United States and approved the deficiency proposed by the Commissioner.

 An enhanced value of manufactured goods prior to sale is an increment, but does not become a profit until reduced to possession by sale. Lynch v. Hornby, 247 U. S. 339, 38 S. Ct. 543, 62 L. Ed. 1149, Eisner v. Macomber, 252 U. S. 189, 40 S. Ct. 189, 64 L. Ed. 521, 9 A. L. R. 1570. Whether or not a profit or gain is realized upon a sale cannot be determined until the sale be had. After manufacture, many intervening factors may determine the loss or gain. It is dependent upon the rule of supply and demand, deterioration or destruction of the product, and although the product may be worth more as a manufactured article than as the raw material, there is no way of determining the profit until a sale be realized and the price becomes known. The method of disposing of petitioner's product was by sale in the United States. It was the happening of that event, the sale, which was the determining factor of whether it sustained a loss or made a profit. The gross income thus came from sources within the United States.

 The phrase of the taxing statute, section 233(b), "including all amounts received * * * representing profits on the manufacture and disposition of goods within the United States," does not mean that Congress intended both the manufacture and disposition of the product to take place in the United States before the gross income therefrom for taxation purposes be determined. The gross profits from sources within the United States, referred to in the statute, is what is intended to be taxed, and it was not intended to distinguish between manufacture and sale. The income was intended to be subject to taxation within the meaning of the statute, whether such sources of income be manufacture, disposition, or both. Where the same organization makes and sells, the income is earned

only upon the sale, and the prior increment flowing from manufacture is not income. It is the entire sum earned which must be taxed, as the statute implies, and this can only follow logically when the sale takes place.

The parenthetical clause of the statute applies to the case of this petitioner. It receives its profits from contracts of sale. But it is argued that, notwithstanding profits are received on contracts of sale of the goods, such profits may not be taxed unless both the manufacture and sale took place within the United States. The portion of the clauses within the parenthesis would seem to relate to the same situation as is described outside of the parenthesis. The language of the clause as a whole was undoubtedly intended to apply to some particular situation which involved elements inconsistent, or apparently inconsistent, with each other. The clause beginning "including all amounts" must mean an extension of the contents. The words "amounts received representing profits," which follow, sufficiently show that intent.

The legislative history of the clause clarifies its intended scope. When the bill was introduced, it provided: "In the case of a foreign corporation gross income includes only the gross income from sources within the United States, including the interest on bonds, notes, or other interest bearing obligations of residents, corporate or otherwise, and including dividends from resident corporations." H. R. 12863, Sept. 3, 1918, 65th Congress, 2d Session. After passing the House, it remained unchanged when reported by the finance committee to the Senate, but there two amendments to the paragraph were offered and agreed upon. Congressional Record, 65th Congress, 3d Session, vol. 57, part 1, p. 772. The House receded in conference to these amendments (House of Representatives' Report No. 1037, Feb. 6, 1919, p. 55) and said: "These amendments propose to make a foreign corporation selling raw materials in the United States to be manufactured here under an agreement that certain profits on the manufacture and disposition of the finished product shall be paid to the foreign corporation include such profits in computing gross income."

The purpose was to reach a foreign corporation which sold raw materials abroad, which were to be manufactured and sold here by the buyer, who in turn was to pay the foreign corporation by giving it a share of the profits, and this accounts for the amounts received representing profits referred to in the parenthesis. Congress did not intend

to make a distinction between goods made abroad and sold here and goods bought abroad and sold here, or goods made and sold here and goods made abroad and sold here. No sound reason is advanced for such inequality or why foreign corporations manufacturing abroad should be exempt. On the contrary, it was intended by the statute to reach profits resulting from the amounts received here in merchandising all such products.

In National Paper Co. v. Bowers, 266 U. S. 373, 45 S. Ct. 133, 69 L. Ed. 331, to which we are referred, a domestic corporation sought to recover taxes alleged to be wrongfully assessed under the Revenue Act of 1921 (42 Stat. 227); part of its income was derived from the purchase of personal property and its sale without the United States, which part was included in the taxable income. There was no manufacturing involved. The taxpayer contended that since, under section 217 and section 233 of the act of 1921 (42 Stat. pp. 243, 254), a foreign corporation in the identical type of business was tax free, the tax imposed involved a discrimination offending the due process clause of the Fifth Amendment. The court considered section 217 and section 233 of the act of 1921, and held that the tax did not offend the Fifth Amendment, in classifying foreign corporations differently with respect to that kind of case. It was not concerned with the 1918 act involved here, nor with the imposition of a tax upon a foreign corporation.

In Barclay & Co. v. Edwards, 267 U. S. 442, 45 S. Ct. 135, 348, 69 L. Ed. 703, the action was by a domestic corporation to recover taxes urged to be wrongfully exacted under the Revenue Act of 1918. Part of the income was derived from manufacture of personal property within and its sale without the United States, which part was included in the taxable income. The taxpayer contended that, since under section 233 of the act of 1918 a foreign corporation in the identical kind of business was tax free, the tax imposed involved a discrimination, offending the due process clause of the Fifth Amendment. Further argument was made that the decision in National Paper Co. v. Bowers, supra, was distinguished because of the act of 1921 therein involved, which provided, with respect to the manufacture in the United States by a foreign corporation of goods which they sold in foreign countries, that the income derived shall be allocated to sources within the United States, and imposed a tax on that part of such income allocated to manufacture, whereas the act of 1918, under which the case

arose, exempts from tax all income of foreign corporations derived from the manufacture or purchase of goods within the United States which they sold or disposed of in foreign countries. The court did not construe the meaning of the act. The case did not deal with the situation where goods were manufactured abroad and sold within the United States, nor did it deal with a foreign corporation.

But it is argued by this petitioner that, because the court accepted for the purpose of the case an interpretation of section 233 which exempts foreign corporations from the taxing act of goods manufactured within, but sold without, the United States, that it would likewise interpret it to exempt foreign corporations from a tax on goods manufactured without and sold within the United States. Such a result does not necessarily follow. The case does not justify the claim that both the manufacture and sale must take place within the United States, or that the foreign corporation which manufactures or purchases abroad and sells within the United States is exempt from tax. On the contrary, the income received by the petitioner is from sources within the United States, and is to be estimated and taxed in the same way as such income is estimated and taxed when manufactured and sold within the United States.

The determination is affirmed.