GROSS INCOME TAX DIVISION ET AL. *v.* BARTLETT

[Nos. 28,609 to 28,611. Filed June 19, 1950. Rehearing denied October 4, 1950.]

506

508

Emmert, C. J., not participating.

*J. Emmett McManamon,* Attorney General; and *John J. McShane, Lloyd C. Hutchinson* and *Edward L. Hamilton,* Deputy Attorneys General, for appellants.

*Schultz, Krinsley, Voorheis & Hedberg,* of Chicago, Illinois, *Crumpacker & Friedrich,* of Hammond; *Raymond Harkrider,* of Chicago, and *Owen W. Crumpacker,* of Hammond (of counsel), for appellee.

YOUNG, J.—This appeal involves three cases from the Marion Circuit Court. Each contains identical issues and by leave of the court they were consolidated for briefing in this court.

The complaints alleged the names of the parties and that the plaintiff, Robert Bartlett is now, and for many years last past has been continuously, a citizen and resident of the City of Chicago, Illinois; that on or about April 27, 1933, he acquired for the purpose of resale the real estate covered by the subdivisions known as Beverly Shores and Lake Shore in Indiana, which land had been laid out into various blocks, lots, streets and alleys; that in the course of selling the lots in said subdivision there was and is no practical market available for said lots in Indiana; that all records and books of account were kept at his office in Chicago, Illinois; that in order for plaintiff to successfully sell lots in Beverly Shores and Lake Shore, and to make collec-

tions of the installments of the purchase price, he maintained an office in the City of Chicago; that he created an organization consisting of salesmen, managers, bookkeepers and other employees; that with very few exceptions all employees, other than the salesmen, devoted all their time and efforts outside the State of Indiana; that the cost to plaintiff of selling said lots in said subdivisions, exclusive of the cost of the land sold, amounted to a substantial percentage of the sales price of such lots and became intangible choses in action; that at least 98 per cent of the obligors upon said contracts for the sale of said lots were domiciled in the City of Chicago and a very substantial portion of the activities and expenditures in connection therewith was performed and made outside the State of Indiana; that the sums of money collected are shown and it is alleged that said real estate sales contracts, since their taxable situs was outside the State of Indiana, could not properly or legally be taxed by the State of Indiana, nor could the receipts therefrom, either principal or interest, properly or legally be taxed by the State of Indiana; that there is a plea for a correction of the amount of taxes paid and the expression of a willingness, without admitting any part of said receipts are properly or legally taxable under the Gross Income Tax of 1933, to pay one per cent upon that portion of said receipts as can reasonably be apportioned to the State of Indiana for taxation under said Act, and to this complaint an answer in denial is filed for and on behalf of the defendants.

A similar complaint was filed in each of the other two cases. There were later motions for substitution of parties defendant. The case was submitted upon a stipulation of facts whereby the allegations tending to support the complaint and the contentions of the parties were set out. There were also findings of fact and conclusions of law, the details of which need not be taken

up in this opinion. Judgments were rendered in the three cases and, upon such findings of facts, the court found for the plaintiff and ordered returned to the plaintiff the sums of money which had been paid. There was a motion to modify the judgment and to adopt special findings proposed by the defendant, both overruled. A motion for a new trial was filed, the basis for which, so far as this law suit is concerned, was that the decision of the court was not sustained by sufficient evidence and the decision of the court is contrary to law, which was denied.

The constitutionality of the Indiana Gross Income Tax Law of 1933 has been upheld by both this court and the Supreme Court of the United States. *Miles et al.* v. *Dept. of Treasury* (1935), 209 Ind. 172, 199 N. E. 372, 298 U. S. 640.

The appellant in a general way contends that the receipts of the appellee were strictly from a local activity, to-wit: from the sale of Indiana real estate, the situs of which is in Indiana. The appellee contends that the receipts herein involved were derived from and attributable to activities or sources outside the State of Indiana which the State of Indiana could not properly or legally tax.

The fundamental position of the appellant is that a nonresident of Indiana who undertakes to sell land or real estate in Indiana thereby creates a situation whereby, so far as appellee is concerned, there was a receipt of income from an Indiana source. The taxable event, as designated in Section 2 of the Gross Income Tax Act is, ". . . Such tax shall be levied upon the entire gross income . . . derived from sources within the State of Indiana of all persons and/or companies, including banks, who are not residents of the State of Indiana but are engaged in busi-

ness in this state or who derived gross income from sources within the state . . ." Section 64-2602, Burns' 1933. This section of the statute has been construed by this court in the case of *Miles* v. *Dept. of Treasury* (1935), 209 Ind. 172, 188, 199 N. E. 372, 378, 379, 298 U. S. 640, where the following language was used.

> "We conclude that the tax in question is an excise, levied upon those domiciled within the state or who derive income from sources within the State, upon the basis of the privilege of domicile or the privilege of transacting business within the State, and that the burden may reasonably be measured by the amount of income. The reasoning which justifies the tax upon the basis of domicile as readily supports and justifies a tax upon the basis of the right to receive income within, or transact business under the protection of the State. We feel that the weight of the reasoning and authority sustains this view."

In the case of *Indiana Creosoting Co.* v. *McNutt* (1936), 210 Ind. 656, 663, 664, 5 N. E. 2d 310, 313, this court used identical language in explanation of the statute.

These cases likewise hold that the taxable contention upon which the gross income tax is assessed, which involves the sale of Indiana real estate, is the fact of sale, and, in further support of this contention, it has been held that executory contracts relating to real estate are governed as to their requisite validity and effect by the law of the place where the real estate is located. *Bethell* v. *Bethell* (1876), 54 Ind. 428, 430; *Robards* v. *Marley* (1881), 80 Ind. 185; *Barnet* v. *Pool* (1859), 23 Tex. 517, 521; *Wheeler* v. *Walker* (1879), 64 Ala. 560, 562.

It should also be remembered that contracts between citizens of different states are not subjects of interstate

commerce where the performance of the contract is to be completed and carried out wholly within the borders of the state, even though such contracts may affect interstate commerce, *Ware & Leland* v. *Mobile County* (1908), 209 U. S. 405, 411; *Western Live Stock* v. *Bureau of Revenue* (1938), 303 U. S. 250, 253; *Department of Treasury* v. *Ingram-Richardson Mfg. Co.* (1941), 313 U. S. 252; *Department of Treasury* v. *Wood Preserving Corp.* (1941), 313 U. S. 62, and the appellee cannot escape the tax by billing from the outside or by setting up his machinery so that the income from the sale is paid to it from another state. *Department of Treasury* v. *Wood Preserving Corp., supra; Continental Assurance Co.* v. *Tennessee* (1940), 311 U. S. 5; *Gross Income Tax Division* v. *J. L. Cox & Sons* (1949), 227 Ind. 468, 86 N. E. 2d 693, 698; *Penn. R. R. Co.* v. *Clark Bros. Coal Co.* (1915), 238 U. S. 456, 465, 466.

The assessment of gross income tax on the sale of real estate in Indiana does not violate the due process clause of the Federal Constitution in that immovable property is exclusively subject to the laws of the government in which it is located. 15 C. J. S., Conflict-of-Laws, § 19b (2), pp. 936, 937, 938; *Restatement, Conflict-of-Laws,* § 215; 11 Am. Jur., Conflict-of-Laws, § 30, p. 328; *Fisher* v. *Parry* (1879), 68 Ind. 465, 468; *Bethell* v. *Bethell, supra.* Whether the seller be a resident of Indiana or a resident of the State of Illinois, our gross income tax law provides by § 2 thereof as follows:

> "(m)   The term 'gross income,' except as hereinafter otherwise expressly provided, means the gross receipts of the taxpayer received . . . from the *sale of property, tangible or intangible, real or personal,* or service, or any or all of the foregoing, and all receipts by reason of the investment of capital, including interest, discount, rentals,

royalties, fees, commissions or other emoluments, however designated, and *without any deductions* on account of the costs of property sold, the cost of materials used, labor cost, interest or discount paid, or any other expense whatsoever, and *without any deduction on account of losses; . . .*" (Our italics.) Ch. 50, § 1 (m), Acts of 1933; Burns' 1943 Replacement, § 64-2601.

Only such commodities as may in the ordinary course of events become subjects of purchase and sale on their movement from one state to another state are articles of commerce under the Commerce Clause of the Constitution, 15 C. J. S., Commerce, § 17, p. 277; *Boddy* v. *Continental Insurance Co.* (Ala. App., 1925), 88 So. 294; *Republic Acceptance Corp.* v. *Bennett* (1922), 220 Mich. 249, 189 N. W. 901, and the decision of the lower court, which in this case holds real estate to be the subject of interstate commerce, is not sustained by the authorities. *Munday* v. *Wisconsin Trust Co. et al.* (1920), 252 U. S. 499, 503; *U. S.* v. *Crosby* (1812), 7 Cranch 115, 116; *Blan* v. *Hollywood Realty Co.* (1928), 118 So. 253, 256; 15 C. J. S., Commerce, § 17, p. 277.

In the case of *Munday* v. *Wisconsin Trust Company, supra,* the Supreme Court of Wisconsin had declared null and void two separate deeds executed and delivered in Illinois which undertook to convey real estate in Wisconsin to a Maine corporation, on the ground that said Maine corporation had failed to comply with the Wisconsin statute prescribing conditions under which foreign corporations might acquire title to real estate therein. In the United States Supreme Court an appeal was perfected challenging the decision of the Wisconsin Supreme Court on the basis of Article I, § 10 of the Fourteenth Amendment, and the Commerce Clause of the Federal Constitution. In upholding the decision

of the Supreme Court of Wisconsin, the United States Supreme Court had the following to say concerning the objections raised:

"Obviously, no impairment of any federal right resulted from the construction placed upon § 1770j as amended in 1917. Whether that section did or did not validate a contract theretofore unenforceable was a question for the state court finally to decide—it involved no right under the Constitution or laws of the United States.

". . .

"Where interstate commerce is not directly affected, a State may forbid foreign corporations from doing business or acquiring property within her borders except upon such terms as those prescribed by the Wisconsin statute. *Fritts* v. *Palmer,* 132 U. S. 282, 288; *Chattanooga National Building and Loan Association* v. *Denson,* 189 U. S. 408; *Interstate Amusement Co.* v. *Albert,* 239 U. S. 560, 568.

"*No interstate commerce was directly involved in the transactions here questioned.* Moreover, this court long ago declared: 'The title to land can be acquired and lost only in the manner prescribed by the law of the place where such land is situated.' *United States* v. *Crosby,* 7 Cranch, 115, 116." (Our italics.)

Ever since the *United States* v. *Crosby* case, *supra,* (7 Cranch 115), as far back as 1812, the United States Supreme Court has held:

"The court entertain no doubt on the subject; and are clearly of opinion that the title to land can be acquired and lost only in the manner prescribed by the law of the place where such land is situate."

The same rule is stated in 15 C. J. S., Conflict-of-Laws, § 19 (a), pp. 936, 937, in the following language:

"Immovable property is exclusively subject to the laws of the government within whose limits it

is located, and it is a rule firmly established by numerous decisions that the law of the jurisdiction in which such property is situated controls and governs its acquisition, disposition, and devolution. This rule, which is embodied in the Restatement, is universal, applying generally to all property classed as immovable, and operates between the several states of the United States as well as between countries entirely foreign to each other. It is not in the power of any state by any legislative act to prescribe the mode in which lands in another state may be disposed of or title thereto passed from one person to another." *U. S.* v. *Fox* (1876), 94 U. S. 315, 320, 321.

To bring this document down to a more recent date, the United States Supreme Court in the case of *Curry* v. *McCanless* (1938), 307 U. S. 357, at p. 363, reiterates this doctrine as follows:

"That rights in tangibles—land and chattels— are to be regarded in many respects as localized at the place where the tangible itself is located for purposes of the jurisdiction of a court to make disposition of putative rights in them, for *purposes of conflict of laws, and for purposes of taxation* is a doctrine generally accepted both in the common law and other legal systems before the adoption of the Fourteenth Amendment and since."

The meaning of the words "gross income" in the statute has been construed by the Supreme Court of Indiana in the case of *Miles* v. *Department of Treasury, supra,* in the following language: "It is contended that the word 'income,' as used in the title of the act, is not broad enough to cover gross receipts or gross income within the intent of the act. But the term 'gross income' is used in the title. This term is understood by lexicographers, and in common usage, to mean total receipts."

The appellee upon its part takes the position that the taxes are unconstitutional and illegal and argue that a particular lot may cost the subdivider a given price and his sales price must be several times this amount if he is to get back his costs and expenses and realize an all-over profit. They then proceed by figures to show that for a lot which sold for $1,000, only $200 might represent the return to the subdivider for the cost for the lot. And they cite *Crew Levick Company* v. *Commonwealth of Pennsylvania* (1917), 245 U. S. 292, 62 L. Ed. 295, and *J. D. Adams Mfg. Co.* v. *Storen* (1938), 304 U. S. 307, 82 L. Ed. 1365. These cases simply hold that the taxable event with reference to each case was the receipt of income from the sale of property moving interstate. Then with the citation of these cases, it is stated that it is a fundamental rule that the power of jurisdiction of the state to impose taxes is limited to subjects or objects having their taxable situs within the territorial limits of the taxing state. And in this connection they cite *Gross Income Tax Division* v. *Fort Pitt Bridge Works* (1949), 227 Ind. 538, 86 N. E. 2d 685, and say that if a state seeks to tax an act, the act must take place within the territorial limits of the taxing state, which is true, even though inapplicable. They then argue Section 19 of Article 4, of the Indiana Constitution, which reads as follows: "Every act shall embrace but one subject and matters properly connected therewith, which subject shall be expressed in the title. But if any subject shall be embraced in an act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be expressed in the title." Numerous cases are cited to sustain this contention, which we have examined with some care and, in our opinion they are not in point.

Then the appellee turns again to the question of whether or not the gross income from the sales derived from sources within the State of Indiana and not from sources elsewhere. *Compania General De Tabacos* v. *Collector of Internal Revenue* (1929), 279 U. S. 306, 73 L. Ed. 704; *Porto Rico Mercantile Co.* v. *Gallardo* (1925), 6 F. 2d 526; *Tootal Broadhurt Leo Co.* v. *Commissioner of Internal Revenue* (1929), 30 F. 2d 239; *Eastman Kokak Co.* v. *District of Columbia* (C. C. A. Dist. Col., 1942), 131 F. 2d 347; *Birken* v. *Commissioner of Internal Revenue* (1926), 5 B. T. A. 402; *Appeal of Yokoma Ki-Ito Kwaisha Ltd.* (1927), 5 B. T. A. 1248; *R. J. Dorn & Co.* v. *Commissioner of Internal Revenue* (1928), 12 B. T. A. 1102; *Elston Co. Ltd.* v. *Commissioner of Internal Revenue* (1940), 42 B. T. A. 208; *Balestreri* v. *Commissioner of Internal Revenue* (1942), 47 B. T. A. 241.

We will not take the time to analyze these cases, but they are not controlling or persuasive in the case before us. We cannot fail to see that the taxable event in this case was the receipt of income from the sale of lots in Indiana and the taxable income here involved consists entirely of such receipts.

The judgment of the lower court must be reversed and it is so ordered, with instructions to the lower court to render judgment for and in behalf of the appellant.

Emmert, C. J. not participating.

NOTE.—Reported in 93 N. E. 2d 174.