**AURORA GASOLINE COMPANY, a corporation, et al., Plaintiffs,**

v.

**Fern Cline COYLE et al., Defendants.**

Civ. No. 1546-D.

United States District Court
E. D. Illinois.

Feb. 27, 1959.

Craig Van Meter, Mattoon, Ill., for all plaintiffs.

Joseph F. Diver, Terre Haute, Ind., for Ohio Oil Co.

Calvert T. Roszell, Lexington, Ky., for Ashland Oil & Refining Co.

Gilbert W. Gambill, Terre Haute, Ind., for R. J. Oil & Refining Co.

George W. Cullen, Springfield, Ill., William T. Fitzgerald, Evansville, Ind., for Fern Cline Coyle.

Carl M. Gray, Petersburg, Ind., for blood heirs of John M. Cline, dec'd.

Gerald Hall, Princeton, Ind., for ancillary adm'r of estate of Pearl McFarland in Indiana.

Douglas H. McDonald, Princeton, Ind., for ancillary adm'r of estate of John M. Cline in Indiana.

Guy E. McGaughey, Mt. Carmel, Ill., for co-adm'rs of estate of John M. Cline in Illinois.

PLATT, Chief Judge.

This suit originated as a civil action of interpleader under § 1335, Title 28 U.S.C. Plaintiffs purchased oil runs from wells on leases covering lands in Illinois and Indiana leased to John M. Cline, deceased. All persons claiming any interest in the payment for this oil were made parties. An order was entered directing the plaintiffs to pay to the Clerk of this Court the amounts due as of January 31, 1958, and be discharged. Plaintiffs have complied with this order.

By stipulation of the parties the issue centers upon the proper division to be made of the funds remaining on deposit with the Clerk of this Court. Fern Cline Coyle, the widow of John M. Cline, deceased, maintains that she is entitled to her share of the funds as provided by the statutes of descent of Illinois [1] and Indiana,[2] where part of Cline's property was located. The brothers, sisters and a child of a deceased brother, the heirs-at-law of John M. Cline, deceased, contend that a written contract between the widow and her present husband, and the heirs providing for the distribution of the funds should be specifically enforced by this court.

John M. Cline died intestate at Mt. Carmel, Illinois, on February 23, 1953. Probate proceedings were commenced in Wabash County, Illinois, and Persaw and Dallas Cline are the duly qualified and acting administrators of his estate. Ancillary proceedings are pending in Knox County, Indiana, where Gerald Hall is the duly qualified and acting ancillary administrator.

---

1. "Rules of Descent and Distribution.) The intestate real and personal estate of a resident-decedent and the intestate real estate in this state of a non-resident decedent after all just claims against his estate are fully paid, descends and shall be distributed as follows:

    *    *    *    *    *

"Third, when there is no descendant but a surviving spouse and also a parent, brother, sister, or descendant of a brother or sister of the decedent: the entire personal estate and one-half of each parcel of real estate to the surviving spouse and one-half of each parcel of real estate to the parents, brothers, and sisters of the decedent in equal parts allowing to the surviving parent, if one is dead, a double portion and to the descendants of a deceased brother or sister per stirpes the portion which the deceased brother or sister would have taken if living * * *."
Ill.Rev.Stat.1953, C. 3, § 162.

2. "General rules of descent—The net estate of a person dying intestate shall descend and be distributed as follows:

"(a) Except as otherwise provided in subsection (b) hereof, the surviving spouse shall receive the following share:

    *    *    *    *    *

"(3) Three-fourths (¾) of the net estate, if there is no surviving issue, but the intestate is survived by one (1) or both of his parents * * *

    *    *    *    *    *

"(c) The share of the net estate not distributable to the surviving spouse * * * shall descend and be distributed * * *.

    *    *    *    *    *

"(2) If there is a surviving spouse but no surviving issue of the intestate, then to the surviving parents."
Ind.Ann.Stat. § 6–201 (Burns' 1953).

John M. Cline left surviving him his widow, Fern Cline, now Coyle, Pearl McFarland, his mother, Dallas Cline, Persaw Cline, William Cline, Orville Cline, Ruby Urbansky, and Alice Widdows White, all brothers and sisters, and Cheryl Cline, a minor daughter of a predeceased brother, Virgil, as his only heirs-at-law.

Pearl McFarland died in Oklahoma intestate in 1956 leaving as her only heirs-at-law the other heirs who survived John M. Cline. Orville Cline was appointed and is the acting administrator of her estate in Oklahoma. Douglas McDonald is the duly qualified and acting ancillary administrator of her estate in Indiana.

Fern Hickey (now Fern Cline Coyle) and John M. Cline, were married in 1928. Though there was never a final decree of divorce the couple did not live together after 1936. For 17 years prior to his death in 1953, John M. Cline lived with one Opal Gleason. On July 19, 1954, Fern Cline married Ivan Coyle.

Subsequent to Cline's death, Opal Gleason claimed to be a full partner in his estate. A suit by her against John M. Cline's estate, resisted by the Illinois administrators, the widow and heirs, was adjudicated against her in the Circuit Court of Wabash County, Illinois, and the decision of the trial court was upheld in Cline v. Cline, 1957, 12 Ill.App.2d 231, 139 N.E.2d 828. That decision became final in December, 1956. At that time claims and taxes against the estate of John M. Cline, deceased, were due.

Toward the end of December, 1956, or the first part of January, 1957, arrangements were made for a meeting between Fern Cline Coyle, her husband, Ivan, Messrs. Howard and Cullen, their attorneys, Guy McGaughey, Jr., attorney for the Illinois administrators of Cline, and Alice Widdows White, as representative of the heirs, to be held in San Francisco, California, where Fern and Ivan Coyle were living. At the first meeting on January 14, 1957, the Coyles, their attorneys, Alice White, and Guy McGaughey, Jr., were present. The status of the estate of John M. Cline and a settlement agreement were discussed. Another meeting was held on the following evening at which the same persons were present and a written instrument or settlement agreement was drawn by McGaughey and Cullen. Fern Coyle and Ivan Coyle, who is an accountant, requested and were given opportunity to examine the instrument and consider it by themselves during the next day. On January 16, certain changes which Fern and Ivan requested were made. That evening Fern and Ivan Coyle advised that they were ready to sign the instrument provided, prior to February 5, 1957, the Illinois administrators would file an accounting through December 31, 1956 with the Clerk of Wabash County Court, and the signatures of all the heirs, their respective spouses, together with those of the administrators, Guy McGaughey, Jr., and George W. Cullen would be obtained to the instrument. Pursuant to the Coyles' instructions, Mr. Cullen, their attorney, on a separate sheet of paper, prepared a brief memorandum setting forth the conditions which they requested be fulfilled before they would execute the agreement, and it reads as follows:

"San Francisco, Calif.
"1–16–57

"To:

Fern Cline Coyle
740 Parnasus
San Francisco, Calif.

"Dear Mrs. Coyle—

"This is to confirm assurances to you this date that I will do the following:

(a) Cause an accounting to be filed in the Wabash County Court (by not later than February (1957) by the Co-Administrators of the Estate of John M. Cline.

(b) Direct George W. Cullen, attorney, for your interests to return to you all of the signed copies of the settlement agreement this day delivered to him if by February 5, 1957, I have not caused all other parties named therein to

evidence their participation in said agreement by fixing their signatures thereto by said February 5, 1957.

Yours Truly,"

McGaughey copied this memorandum, signed it, and after Mrs. Coyle requested that the County Judge of Wabash County, Illinois approve the proposed contract, added at the bottom of the page under his signature, the words, "I will execute the agreement if the County Court approves it before February 5, 1957." Ivan and Fern Coyle then signed McGaughey's copy below this sentence.

The Illinois administrators filed, prior to February 5, 1957, a full and complete accounting of their actions in the estate of John M. Cline, deceased, in the County Court of Wabash County, Illinois, from the time of their appointment to December 31, 1956. All of the parties, with the exception of Fern and Ivan, duly signed and acknowledged the written instrument, and delivered it to the County Judge of Wabash County, Illinois, who, prior to February 5, 1957, sent it to Fern and Ivan Coyle with his approval. In its pertinent parts, the instrument as originally proposed, read as follows:

"Witnesseth:

"Now, Therefore, Know All Men by These Presents: That the undersigned, Orville Cline, being joined by Pearl Cline, his wife; Ruby Urbansky, a widow never having remarried since the death of her husband; Alice Widdows, a single person never having remarried since she obtained a divorce for the fault of her husband; Doris Emma Goodell, mother, Next Friend and Guardian of Cheryl Cline, a minor; Dallas Cline, being joined by Ollie Cline, his wife; Persaw Cline, being joined by Norene Cline, his wife; William Cline, being joined by Ethel Cline, his wife; Fern Cline Coyle, being joined by Ivan Coyle, her husband; Orville Cline, as Administrator of the estate of Pearl McFarland, deceased; and Persaw M. Cline and Dallas Cline, as Co-Administrators of the estate of J. M. Cline, deceased, and Guy McGaughey, Jr., attorney for the Co-Administrators aforesaid, and George W. Cullen, attorney for Fern Cline Coyle, for and in consideration of the expeditious administration of the estate and payment of the debts hereinafter mentioned, do hereby stipulate, covenant and agree between themselves as follows, to-wit:

"1. Ashland Oil & Refining Company, Aurora Gasoline Company, Ohio Oil Company and R. J. Oil & Refining Company, purchasers of oil and/or gas produced, saved and marketed from the designated leaseholds identified on Exhibit 'A' [which exhibit lists the various oil leases of John M. Cline, deceased, in Indiana and Illinois] are hereby directed and authorized, without further authorization or assurances from the undersigned, to pay immediately to Dallas Cline and Persaw M. Cline, Co-Administrators of the Estate of J. M. Cline, proceeds, respectively held in suspense by said crude oil purchasers, credited and accrued through and including December 31, 1956, to the interest of J. M. Cline, Deceased, and his heirs in said Oil and Gas Leases identified in Exhibit 'A' and the leasehold estates thereby created insofar as said Oil and Gas Leases cover all of the premises as described in said Leases and as ratified, amended, communitized and/or corrected as the case may be and as the record title may show, irrespective whether the leasehold premises are accurately described on Exhibit 'A' or not. Parties hereto agree to execute and witness the necessary division orders to effectuate such distribution of said proceeds.

"2. That each of said crude oil purchasers in relying on this instrument are individually and collectively indemnified and saved harmless from any causes of action, lia-

bilities and/or damages in making said payments of such proceeds to the said Co-Administrators and the crude oil purchasers are further relieved from any liability, duty or obligation to follow the application or payment of said proceeds to the debts of the Estate of J. M. Cline or otherwise. That the intent of this paragraph is to completely save the crude oil purchasers harmless and indemnify them for making such payments. That each of the Co-Administrators are under bond and the undersigned are relying on such bond for the Co-Administrators performing their duties in making the proper payment of said proceeds as hereinafter stated.

"3. * * * [Provides for deposit of the funds on special account of J. M. Cline Estate.]

"4. * * * [Provides for payment of taxes and operating expenses.]

"5. The residue remaining in the hands of the Co-Administrators after making the disbursements provided for in paragraph (4) above, shall be disbursed at one time for the following purposes:

    a. Payment of all remaining estate claims;

    b. Payment of all expenses, fees and costs of administration;

    c. Payment of attorneys fees and expenses due and owing to George W. Cullen, partner in the lawfirm of Sorling, Catron and Hardin, in respect of the personal estate;

    d. Payment of attorneys office overhead expense;

    e. 50% of the remainder to Fern Cline Coyle.

    f. 50% of the remainder to the following named persons as their interests may appear;

    1. Orville Cline, Administrator of the estate of Pearl McFarland;

    2. The brothers and sisters of John M. Cline, deceased;

    3. Cheryl Cline, niece of John M. Cline, deceased.

"6. * * * [Provides for payment of attorney fees to Cullen.]

"7. * * * * * * *

"8. All real properties owned by John M. Cline and comprising a part of his estate are hereby declared to be owned by the parties hereto as follows:

    (a) 45% of the interest therein in Fern Cline Coyle, and 5% of the interest therein in the members of the law firm of Sorling, Catron and Hardin, a law partnership, Springfield, Illinois.

    (b) 50% of the interest therein in the brothers and sisters and Cheryl Cline in equal shares *subject, however, to the contractual rights therein in Marshall Huser*, attorney at law in Wewoka, Oklahoma. [Emphasis supplied.]

"9. The within instrument may be executed in separate parts so long as the body and text of said instrument conform to that copy of the instrument which has been executed by Fern Cline Coyle and Ivan Coyle. Said instrument as executed in counterparts by all parties hereto shall be binding on the parties hereto, their heirs, executors, administrators, assigns and successors in office.

" * * * [The signatures and acknowledgments of all parties, except the Coyles, are affixed.]"

Before Mr. McGaughey circulated the above instrument for signatures, and after returning from California, he in-

serted the name "Marshall Huser, an Attorney," in the first paragraph following the introductory word "Witnesseth," immediately after the words "and George W. Cullen, attorney for Fern Cline Coyle." He also had Huser sign and acknowledge the instrument. The document which was returned to the Coyles approved by the Judge of the County Court, was an exact duplicate of the one which the Coyles had retained, with the exception of the insertion of Marshall Huser as a party, and an additional line added for Marshall Huser's signature.

On February 7, 1957, Mrs. Coyle sent a letter to the Judge of the County Court of Wabash County, Illinois, and a copy to McGaughey which acknowledged receipt of the signed document and stated:

"However, in looking over the document, I find it is not the exact copy of the one I have in my possession and the one on which the agreement was based. Therefore, I am returning it unsigned.

"It is my opinion that the insertion of Marshall Huser's name under "witnesseth" constitutes a material difference in the Settlement Agreement. It is my understanding that Marshall Huser is not to be a party to this Settlement Agreement."

The Coyles now contend that since the document was varied, they are not bound nor required to sign it. On the other hand, the heirs maintain that the change made by McGaughey did not vary the terms of the settlement and together with the memorandum signed by the Coyles there was a contract which should be specifically enforced.

■ Jurisdiction in an interpleader suit rests upon the diversity of citizenship of the claimants. 28 U.S.C. § 1335. Since jurisdiction rests upon diversity, the law of Illinois, the forum state, including its law of conflicts, is applicable and must be applied. Williams v. McFerrin, 5 Cir., 1957, 242 F.2d 53. The instrument in question was drawn in California but affects the rights of the parties in oil leases in Illinois and Indiana. In Illinois, oil in place and the rights thereto comprise an interest in real estate. Miller v. Ridgley, 1954, 2 Ill.2d 223, 117 N.E.2d 759. The Illinois law of conflicts requires the application of the law of the situs of the land in determining the validity, construction, force, and effect of an instrument affecting real estate. Sternberg v. St. L. Union Tr. Co., 1946, 394 Ill. 452, 68 N.E.2d 892, 169 A.L.R. 545. Indiana also applies the law of the situs of the real estate affected. Gross Income Tax Division v. Bartlett, 1950, 228 Ind. 505, 93 N.E.2d 174, appeal dismissed 340 U.S. 924, 71 S.Ct. 499, 95 L.Ed. 667.

■ Analyzing the transaction presented, the instrument coupled with the memorandum signed by the Coyles was an offer of settlement to the heirs, the administrators, and the attorneys, McGaughey and Cullen, for a division of the oil runs and of the interests in the oil leases upon certain terms. The Coyles offer did not include Huser as a party or that he should sign the document. The offer was not made to Marshall Huser. The Coyles had the right to determine with whom they would contract, and no other person could accept the offer and bind them without their consent. Barker v. Keown, 1896, 67 Ill.App. 433; Langdon v. Hughes, 1903, 113 Ill.App. 203. The party making an offer may require the offer be accepted by the offeree without variance. Krause v. Buttino, 1955, 4 Ill.App.2d 75, 123 N.E.2d 337. The minds of the negotiating parties must meet on the identity of those to be bound before there is an enforceable contract. Gates v. Petri, 1957, 127 Ind.App. 670, 143 N.E.2d 293. This change made in the parties varied the terms of the offer and amounted to a counteroffer which the Coyles were not required to accept, nor did they accept it.

The heirs argue that the court should examine the instrument as a whole and that inasmuch as the terms were not varied by the presence of Huser's signa-

ture, there was an offer and acceptance from which a valid contract resulted. The fallacy is obvious. Huser not alone signed the instrument but his name appeared as a party. Whether the offer or instrument is viewed as a whole or in parts, there was a change in the acceptance that varied the very terms of the offer. Certainly the identity of the parties to a contract is as important to a meeting of the minds as any other term upon which the parties must agree. The Coyles testified that they stated at the meetings in California that Marshall Huser should not be a party to the contract. Regardless of the weight of this testimony, there is no evidence that the Coyles had the intention of making an offer to Huser, nor that they had knowledge that McGaughey intended Huser to accept their offer as a party. As a matter of construction of the instrument as a whole, when Huser was made a party and signed, it did vary the terms of the offer. Before the change, Huser's name appeared only in paragraph 8(b) of the instrument, wherein it stated:

"50% of the interest therein in the brothers and sisters and Cheryl Cline in equal shares subject, however, to the contractual rights therein in Marshal Huser, attorney at law in Wewoka, Oklahoma."

By this reference to Huser, he acquired no affirmative rights.

"The words 'subject to,' used in their ordinary sense, mean 'subordinate to,' 'subservient to' or 'limited by.' There is nothing in the use of the words 'subject to,' in their ordinary use, which would even hint at the creation of affirmative rights." Englestein v. Mintz, 1931, 345 Ill. 48, 61, 177 N.E. 746, 752.

Since Huser had no affirmative rights by the original document, he was certainly not made a third party beneficiary. When Huser was added as a party and placed his signature with the other parties on the instrument, his position was quite different. By paragraph 1 of the original instrument it was provided, "Parties hereto agree to execute and witness the necessary division orders to effectuate such distribution of said proceeds." This was made applicable to Huser as a party as well as to all the other parties and all division orders would require his execution. Under paragraph 2 of the original instrument, when he was made a party, he became an additional surety to hold harmless the oil companies if they paid the monies for the oil runs to the Illinois co-administrators. Obviously he had certain rights, obligations, and liabilities which he did not have when he was not a party to the contract. As a party, Huser could enforce the contract. There was no meeting of the minds of the original parties that Huser should be required to sign division orders, that he should be the additional surety, or that he should be allowed to enforce the contract. The adding of Marshall Huser as a party and having him sign the instrument not alone changed the parties to the document but actually varied its terms. The instrument submitted to the Coyles for their signatures amounted to a counteroffer which they were not required to accept and which they immediately rejected. Therefore, a contract was not consummated.

Findings of fact, conclusions of law and final order of distribution in accordance with the views expressed may be submitted.