REPUBLIC ACCEPTANCE CORPORATION v. BENNETT.

1. CORPORATIONS—FOREIGN CORPORATIONS—DOING BUSINESS WITHIN THE STATE.

Where plaintiff, a foreign corporation engaged in the business of purchasing or discounting securities obtained on the sale of motor vehicles, opened an office in Detroit with a local manager, and obtained a large amount of business which was done through said office, it was doing business in this State within the meaning of Act No. 310, Pub. Acts 1907 (2 Comp. Laws 1915, §§ 9063-9072), requiring foreign corporations to take out a State license, pay a franchise fee, etc.

On soliciting trade by corporation as doing business within the State, see notes in 9 L. R. A. (N. S.) 1214; 23 L. R. A. (N. S.) 834; L. R. A. 1916E, 236; 6 B. R. C. 801.

2. COMMERCE—INTERSTATE COMMERCE—FOREIGN CORPORATIONS.

Where, as between plaintiff foreign corporation and its customers in this State, all of the business was done with plaintiff's manager in the Detroit office and no interstate agency was employed therein, said business cannot be said to be interstate commerce, notwithstanding the fact that it used the mails between Detroit and its home office in Pittsburgh in carrying on its business.

3. SAME—INTERFERENCE BY STATE WITH INTERSTATE COMMERCE.

Since the reasoning on which State interference with interstate commerce is not permitted is that such commerce must be free, unhampered, and unobstructed by State laws or regulations, the burden imposed, to be subject to objection, must be direct and substantial.

4. SAME—NOT EVERY BUSINESS "COMMERCE."

Not every business connected with commerce is commerce.

5. SAME—MONEY NOT COMMERCE.

Money is not an article of commerce, but merely a medium of exchange.

6. CORPORATIONS — FOREIGN CORPORATIONS — DOING BUSINESS IN STATE—FAILURE TO COMPLY WITH STATUTE RENDERS CONTRACTS VOID.

Where a foreign corporation was conducting its business of buying securities in this State through its Detroit branch office without having complied with the provisions of the statute in respect to doing business in this State, its right to recover in an action on contracts of guaranty of certain of said securities so received, is barred.

Error to Wayne; Law (Eugene F.), J., presiding. Submitted June 7, 1922.    (Docket No. 28.)    Decided October 2, 1922.

Assumpsit by the Republic Acceptance Corporation against Glenn Bennett and another, copartners as the Bennett-Williamson Company, on certain contracts of guaranty.    Judgment for defendants on a directed verdict.    Plaintiff brings error.    Affirmed.

*Beaumont, Smith & Harris,* for appellant.

*Monaghan, Crowley, Reilley & Kellogg,* for appellees.

SHARPE, J.   The plaintiff, a foreign corporation with its home office at Pittsburgh, Pennsylvania, as successor to the Republic Mortgage Company, brings this suit to recover on three contracts of guaranty of certain securities executed by defendants. The defense raised was that the failure of the mortgage company, hereafter spoken of as the plaintiff, to comply with the statutes of this State requiring such corporations to take out a State license, pay a franchise fee, etc., barred its recovery.   The trial judge so found and directed a verdict for defendants.

There is little dispute about the facts.   The business conducted by plaintiff at Pittsburgh was that of purchasing or discounting securities obtained on the sale of motor vehicles.   It desired to enter the Detroit field.   It was apparent that in order to secure any considerable amount of business it must have a local representative.   It sent one William Lininger to Detroit to investigate.   On his reporting that "there was an excellent field in Detroit to do business" it instructed him by long distance telephone to make arrangements for the rental of offices.   He secured rooms in the Free Press building and forwarded a lease of same to the Pittsburgh office for approval. It was approved.   Plaintiff forwarded the office furniture and caused its name to be lettered on the door with the name of Mr. Lininger as manager below it. It paid at least a part of the office expenses.   The contract of employment with Lininger was in the form of a proposal to him by letter accepted in writing by him.   The first paragraph reads:

"It is hereby agreed and understood that you are to come into the Republic Mortgage organization as manager of the Detroit office, your duties will be to call on the automobile, truck and tractor trade in the interests of the Republic Mortgage Company."

The duties he performed are thus stated by him:

"I personally called upon dealers and distributors; gave them a schedule of the rates of the Republic Mortgage Company, and in most instances, I left a sample of the conditional sales agreement or leases, together with a blank financial statement. * * * I would call around each morning and I spent the mornings as a rule, in the beginning and half of the afternoons, in calling around on the dealers, in order to get them interested in our proposition, and the first step taken was by the dealers filling out the financial statements, which commenced to come very rapidly after soliciting there for a week or ten days, and the financial statement was then sent to Pittsburgh for their approval. They would advise me, after they had made their investigations, whether they could handle their paper. * * * That is where dealers would sell cars on time and the purchaser would sign these papers, and by paying not less than one-third of the purchase price to the dealer, the remaining balance would be financed by the Republic Mortgage Company, deducting their charges from that amount."

He prepared circular letters which he sent to the trade and advertisements for insertion in the city papers, which were approved by plaintiff. Bulletins sent from Pittsburgh were transcribed by him and mailed to local dealers. The circular letter received by defendants read as follows:

"The Republic Mortgage Company
of Pittsburgh, Pennsylvania.
"Authorized Capital $7,000,000.
"Executive offices:
"Frick Annex Building,
"Pittsburgh, Pa.
"Detroit, Michigan,
"September 9, 1919,
"Detroit Branch Office,
"809-810 Free Press Building,
"William Lininger, Manager.
"BENNETT, WILLIAMSON COMPANY,
"215 Monroe Avenue,
"Detroit.
"*Gentlemen:* The Republic Mortgage Company of

Pittsburgh whose business it is to finance automobile manufacturers, distributors and dealers in connection with their time sales, have gone to considerable expense in establishing and operating a direct branch office in Detroit.

"We are making this office absolutely self sustaining in every sense of the word. We are equipping it with all of the tools necessary to make it as complete an institution, insofar as *service* is concerned, as you can possibly find anywhere.

"We are doing these things for the sole purpose of giving you immediate action and for the personal benefit of you dealers.

"Now, under these conditions, don't you think we are entitled to at least a portion of your business in as much as our plan is unquestionably better in many respects than any other financial plan in existence?

"Won't you be good enough therefore to file with us a copy of your financial statement on the enclosed blank and this will place you in a position to start in immediately and do business with us. We will send you a supply of our leases with a specimen copy, in order that you may know at a glance just how to fill them out. Our whole system is ideal in every respect and if you want the 'best,' associate yourself with the 'Republic.'

"Yours truly,
"THE REPUBLIC MORTGAGE COMPANY,
"W. LININGER, Manager,
"Detroit Branch.
"Suite No. 809,
"Free Press Building,
"Detroit, Mich.
"Telephone—Main 5340.
"OUR SERVICE GUARANTEED."

One of the advertisements inserted read as follows:

"Republic Mortgage Company.   Capital $7,000,000. Direct Branch Office, the Free Press Building, Suite 809.   Liberal advances on Warehouse receipts and documentary drafts; also to distributors and dealers in Motor Vehicles on Leases—Floor plan.   Time payments.   Unexcelled facilities in all departments.

Phone or write for plans.     An interview solicited. Telephone, Main 5340."

The negotiations with defendants and others from whom securities were purchased were conducted by Lininger as agent or manager for plaintiff.   A representative of the company from Pittsburgh rendered him some assistance.   The blank forms of conditional sales agreements, assignments and guaranties were prepared by plaintiff and sent to Lininger for distribution among the dealers.   When filled out and executed they were delivered to Lininger who recorded them with the city clerk and sent them to the office at Pittsburgh for approval.   On approval, checks were mailed to him for delivery to the persons from whom the securities were purchased.   Payments pursuant to such assignments were to be made in Pittsburgh, but it appears that several such payments were made to and receipted by Lininger.   On receipt of such moneys he deposited them to his credit in a bank in Detroit and sent his personal check to plaintiff for the amount paid.   At plaintiff's request, he engaged the services of a Detroit credit reporting agency, from which he secured reports on prospective dealers and purchasers of vehicles, and forwarded these with the other papers to the home office of the company. A charge was made by the plaintiff for securing such information.   In some instances the deal was treated as completed and the vehicle turned over to the purchaser before the contract and accompanying papers were sent to Pittsburgh.   It also appears that business of a similar character was transacted with parties living in "Grand Rapids and one or two outlying towns adjacent" through the Detroit office.

Act No. 310 of the Public Acts of 1907 (2 Comp. Laws 1915, §§ 9063-9072) requires foreign corporations engaging in business in this State to comply

with the provisions thereof.   The pertinent sections of the act follow:

"SECTION 1.   It shall be unlawful for any corporation organized under the laws of any State of the United States, except the State of Michigan, or of any foreign country, to carry on its business in this State, until it shall have procured from the secretary of State of this State a certificate of authority for that purpose."   *   *   *

"SEC. 5.   *   *   *   Every corporation subject to the provisions of this act, which shall neglect or fail to comply with its requirements, shall be subject to a penalty of not less than one hundred dollars nor more than one thousand dollars for every month that it continues to transact business in Michigan, without complying with the requirements of this act."   *   *   *

"SEC. 6. No foreign corporation, subject to the provisions of this act, shall be capable of making a valid contract in this State until it shall have fully complied with the requirements of this act, and at the time holds an unrevoked certificate to that effect from the secretary of State."

Section 7 (9069) prescribes a penalty for any one acting as agent for a foreign corporation not authorized to do business under the act.

The errors assigned present the following questions:

(1) Was plaintiff carrying on its business in this State?

(2) Was the transaction one of interstate commerce?

(3) Is the statute applicable to the contract sued on?

1. Under any reasonable interpretation of the language of the statute plaintiff was carrying on its business in this State.   It established and maintained a branch office in Detroit, employed a manager to take charge thereof, through him and others sent to

assist him solicited and obtained a large amount of business, furnished the blanks on which securities and assignments were written, secured investigation of the financial standing of customers, recorded the securities purchased, made payments of the consideration,—in fact, transacted all the business with the persons from whom it purchased securities in such branch office.

In 14A C. J. p. 1270, it is said:

"The general rule is that when a foreign corporation transacts some substantial part of its ordinary business in a State, it is doing, transacting, carrying on or engaging in business therein, within the meaning of the statutes under consideration."

The following from *Vaughn Machine Co.* v. *Lighthouse,* 64 App. Div. 142 (71 N. Y. Supp. 799), was quoted approvingly in *Neyens* v. *Worthington,* 150 Mich. 580, 588 (18 L. R. A. [N. S.] 142):

"The crucial test in doing business within the meaning of this statute is not an isolated transaction within the State or the transshipment of goods from the home office, pursuant to orders taken by drummers within the State, but it is the establishment of an *agency or branch office* within our State limits."

An enlightening discussion of this question by Mr. Justice STONE will be found in *Rex Beach Pictures Co.* v. *Garson Productions,* 209 Mich. 692. The cases therein cited will be found instructive.

2. We do not think the transaction was one in interstate commerce. The purpose of the plaintiff was to establish a branch office in Detroit in which its Michigan business should be transacted. The defendants and other Michigan customers had nothing to do with the officials of the home office. Their dealings were with the Detroit manager. There was no negotiation, correspondence or dealing of any kind between

plaintiff and defendants except that conducted by plaintiff's manager at Detroit.   The defendants delivered to him certain securities assigned to plaintiff and the written guarantees of payment thereof. These were forwarded to plaintiff by its own representative.   As between plaintiff and defendants, no interstate agency was employed.   That the mails passing between Detroit and Pittsburgh were used by plaintiff in the transaction of its business affairs with its Detroit manager in no way serves to impress upon these contracts the characteristics of a transaction in interstate commerce.   The reasoning on which State interference is not permitted is that such commerce must be free, unhampered and unobstructed by State laws or regulations.   The burden imposed, to be subject to objection, must be direct and substantial. *United States Fidelity & Guaranty Co.* v. *Kentucky,* 231 U. S. 394 (34 Sup. Ct. 122).   Not every business connected with commerce is commerce.   *Hooper* v. *California,* 155 U. S. 648 (15 Sup. Ct. 207).   Money is not an article of commerce but merely a medium of exchange.   12 C. J. p. 21.

3. Counsel for plaintiff contend that the contract sued upon was not made in Michigan and therefore not subject to the provision of section 9068 which applies only to contracts "made in this State."   As before stated all the negotiations leading up to the purchase of the securities by the plaintiff were conducted in Detroit.   The assignments and guaranties were executed there and delivered to plaintiff's manager.   He sent them to Pittsburgh for approval and, after such approval, the transaction which theretofore had been but a proposal on the part of the defendants became a binding contract by the delivery of plaintiff's check to the defendants at Detroit in payment of the consideration therefor.   The contract clearly was one

made in this State and subject to the applicable provisions of the statute.

The views we have expressed render it unnecessary to consider the other interesting questions discussed by counsel.

The judgment is affirmed.

FELLOWS, C. J., and WIEST, MCDONALD, CLARK, BIRD, MOORE, and STEERE, JJ., concurred.