HOPKINS, J.T.C.
This is an appeal from the determination by the Director, Division of Taxation, that S.M.Z. Corporation is not authorized to compute its New Jersey Corporation Business Tax, N.J.S.A. 54:10A-1 et seq., by apportioning its income and net worth by taking into consideration real property, located in Connecticut, which it owns and rents.
The tax years and additional assessments are as follows:
*235 Fiscal Year[1] Ending
Tax
Penalty
Interest To 10/15/78
2/28/73
2/28/74
2/28/75
2/28/76
$ 652.72
2.277.56
2,918.43
2.772.57
$ 32.63
113.87
145.94
138.62
$ 458.53
1,326.67
1,226.90
665.41
S.M.Z. is incorporated under the laws of New Jersey with a statutory place of business in New Jersey. It owns commercial rental property on Route 7, Brookfield, Connecticut, which it leases, on a net basis, except for property taxes, to Texaco for use as a gasoline station. It has no regular employees working outside New Jersey and does not maintain or occupy the Connecticut property. Further, S.M.Z. has no regular employees working in New Jersey.
All of S.M.Z.’s property and income is located and generated in Connecticut and New Jersey, with the exception of a small gasoline station located in New York similarly leased on a net lease basis. It is not seeking allocation with respect to the New York property.
N.J.S.A. 54:10A-1 et seq., known as the Corporation Business Tax Act, imposes a franchise tax upon every domestic and foreign corporation
... for the privilege of having or exercising its corporate franchise in this State, or for the privilege of doing business, employing or owning capital or property, or maintaining an office, in this State. . . .
The tax is for the privilege of conducting the prescribed activities and is not a levy on the underlying assets or income. Werner Machine Co. v. Taxation Div. Director, 17 N.J. 121, 110 A.2d 89 (1954), aff’d 350 U.S. 492, 76 S.Ct. 534, 100 L.Ed. 634 (1956).
*236 S.M.Z. filed New Jersey corporate business tax returns for the years involved, claiming an allocation of its net income and net worth computation, showing the following:
Taxable Year Ending
2/28/74
2/28/75
2/28/76
2/28/77
Adjusted Net Worth
$203,448
197,343
242,837
235,487
Adjusted Net Income
$15,036
47,713
48,947
46,750
New Jersey [2] Allocation Factor
47.1 %
29.82
29.78
30.29
N.J. Corp. Business Tax
$ 581.16
900.25
1,237.86
1,204.70
S.M.Z. also filed delinquent Connecticut corporation business tax returns for the aforesaid taxable periods showing as follows:
Connecticut Net Worth
Taxable
Averaged
Allocation
Year Ending
Net Worth
Factor
2/28/73
2/28/74
2/28/75
2/28/76
2/28/77
$142,077
156,430
173,498
198,940
223,561
40.1455%
53.2476%
43.2862%
42.9440%
34.3378%
Conn.
Net
Income
Conn. Corp.
Income
Alloc. Factor
Business Tax
$33,773
13,221
47,679
47,721
45,310
9.2526%
16.8064%
17.1085%
15.1610%
13.6273%
$250.00
177.65
815.72
723.50
617.46
In denying S.M.Z. the right to allocate, the Director relies on N.J.S.A. 54:10A-6 and N.J.A.C. 18:7-7.2. N.J.S.A. 54:10A-6 *237 provides as follows:
In the case of a taxpayer which maintains a regular place of business outside this State other than a statutory office, the portion of its entire net worth to be used as a measure of the tax .. . and the portion of its entire net income to be used as a measure of the tax .. . shall be determined by multiplying such entire net worth and entire net income, respectively, by an allocation factor.. . .
N.J.A.C. 18:7-7.2(a) has defined “regular place of business” as follows:
A regular place of business is any bona fide office (other than a statutory office), factory, warehouse, or other space of the taxpayer which is regularly maintained, occupied and used by the taxpayer in carrying on its business and in which one or more regular employees are in attendance.
S.M.Z. alleges that (1) the failure to permit allocation is contrary to the scheme of the New Jersey Business Tax Act; (2) even if the Director was correct in applying N.J.S.A. 54:10A-6, he erred by not adjusting the allocation formula pursuant to N.J.S.A. 54:10A--8(e), N.J.A.C. 18:7-8.3 and N.J.A.C. 18:7-10.1; (3) the failure to permit allocation is a violation of the Commerce Clause, U.S. Const., Art. I, § 8, and (4) the failure to allocate results in double taxation and thereby violates the Due Process and Equal Protection Clauses of U.S. Const., Amend. XIV, § 1.
N.J.A.C. 18:7-7.2(a), which sets objective criteria for the purpose of allocation, was the subject of review in Hoeganaes Corp. v. Taxation Div. Director, 145 N.J.Super. 352, 367 A.2d 1182 (1976). That court sustained the Director’s decision not to permit allocation where the taxpayer’s employees maintained “home” offices for their own convenience in performing services for the taxpayer in other states. Even though the validity of the regulation was not questioned, the court stated that the Director’s interpretation of the statute was entitled to some weight and is evidence of its conformity with legislative intent. So, too, in Rocappi v. Taxation Div. Director, 3 N.J.Tax. 311, 182 N.J.Super. 163, 440 A.2d 96 (Tax Ct.1981), this court had no difficulty in accepting the objective definition of a regular place of business for the purpose of permitting allocation. Those cases are controlling relative to permissive allocation within the scheme of the act.
*238 S.M.Z.’s second contention is that the Director should allocate even if S.M.Z. does not meet the objective requirements of N.J.A.C. 18:7-7.2(a). S.M.Z. mistakenly relies on N.J.S.A. 54:10A-8, which reads as follows:
If it shall appear to the commissioner that an allocation factor determined pursuant to section 6 does not properly reflect the activity, business, receipts, capital, entire net worth or entire net income of a taxpayer reasonably attributable to the State, he may adjust it by:
(a) excluding one or more of the factors therein;
(b) including one or more other factors, such as expenses, purchases, contract values (minus subcontract values);
(c) excluding one or more assets in computing entire net worth; or
(d) excluding one or more assets in computing an allocation percentage; or
(e) applying any other similar or different method calculated to effect a fair and proper allocation of the entire net income and the entire net worth reasonably attributable to the State.
The statute authorizes the Commissioner (now the Director) to adjust the § 6 allocation factor if he believes it does not properly reflect the corporation’s activities. This necessarily presupposes that there is a § 6 allocation factor. As previously shown, S.M.Z. did not qualify for an allocation factor under N.J.S.A. 54-.10A-6 and N.J.A.C. 18:7-7.2(a). The authority given the Director under N.J.S.A. 54:10A-8 was to adjust an allocation factor and not to create one not otherwise available.
S.M.Z.’s third contention is that the failure to permit allocation under the facts in this case improperly burdens interstate commerce. This argument necessarily presupposes that the rental of Connecticut real estate was interstate commerce.
In Gross Income Tax Div. v. Bartlett, 228 Ind. 505, 93 N.E.2d 174 (Ind.Sup.Ct.1950), app. dism. 340 U.S. 924, 71 S.Ct. 499, 95 L.Ed. 667 (1951), the issue was whether a nonresident could be taxed under Indiana’s Gross Income Tax Law on the proceeds from the sale of land in Indiana. In sustaining the tax the court stated:
It should also be remembered that contracts between citizens of different states are not subjects of interstate commerce where the performance of the contract is to be completed and carried out wholly within the borders of the state, even though such contracts may affect interstate commerce, Ware & Leland v. Mobile County, 1908, 209 U.S. 405, 411, 28 S.Ct. 526 [528], 52 L.Ed. 855, 14 Am.Cas. 1031; Western Live Stock v. Bureau of Revenue, 1938, 303 U.S. 250, *239 253, 58 S.Ct 546 [547], 82 L.Ed. 823, 115 A.L.R. 944; Department of Treasury v. Ingram-Richardson Mfg. Co., 1941, 313 U.S. 252 [61 S.Ct. 866, 85 L.Ed. 1313]; Department of Treasury v. Wood Preserving Corp., 1941, 313 U.S. 62, 61 S.Ct. 885, 85 L.Ed. 1188, and the appellee cannot escape the tax by billing from the outside or by setting up his machinery so that the income from the sale is paid to it from another state. Department of Treasury v. Wood Preserving Corp., supra; Continental Assurance Co. v. State of Tennessee, 1940, 311 U.S. 5, 6, 61 S.Ct. 1, 85 L.Ed. 5;. Gross Income Tax Division v. J.L. Cox & Sons, 1949, Ind.Sup. [227 Ind. 468], 86 N.E2d 693, 698, 10 AL.R.2d 642; Penn R.R. Co. v. Clark Coal Co., 1915 238 U.S. 456, 465, 466, 35 S.Ct. 896 [899], 59 L.Ed. 1406. [at 177]
The court then went on to define “interstate commerce” as follows:
Only such commodities as may in the ordinary course of events become subjects of purchase and sale on their movement from one state to another state are articles of commerce under the Commerce Clause of the Constitution, art. 1, § 8, cl. 3,15 C.J.S., Commerce, § 17, p. 277; Boddy v. Continental Insurance Co., 1925, 18 Ala.App. 65, 88 So. 294; Republic Acceptance Corp. v. Bennett, 1922, 220 Mich. 249, 189 N.W. 901, and the decision of the lower court, which in this case holds real estate to be the subject of interstate commerce, is not sustained by the authorities. Munday v. Wisconsin Trust Co., et al., 1920, 252 U.S. 499, 503, 40 S.Ct. 365 [366], 64 L.Ed. 684; U.S. v. Crosby, 1812, 7 Crunch [U.S.] 115, 116, 3 L.Ed. 287; Blan v. Hollywood Realty Co., 1928, 218 Ala. 1, 118 So. 253, 256; 15 C.J.S. Commerce, § 17, p. 277. [at 177-178]
See, also, Blan v. Hollywood Realty, 118 So. 253 (Ala.App.Ct. 1928), cert. den. 218 Ala. 2, 118 So. 258 (Ala.Sup.Ct.1928), to the same effect.
While the question involved in both the above cases hinged on the sale of real estate, there can be no difference, for interstate commerce purposes, between leasehold contracts and fee contracts. Accordingly, the rental of the Connecticut real estate by S.M.Z. was not an act of interstate commerce. Therefore, S.M.Z. cannot argue that the Director’s failure to permit apportionment constituted a burden on interstate commerce.
S.M.Z.’s final contention is that the failure to apportion is in violation of due process and the equal protection of the laws. In so arguing, it accepts the proposition that, as a domestic corporation, its total income can be taxed in New Jersey. Hough v. Taxation Div. Dir., 2 N.J.Tax 67 (Tax Ct.1980). However, it mistakenly relies on those cases which restrict taxation of nondomestic corporations. Those cases properly stand for the proposition that, in determining whether a state tax falls within *240 the confines of the Due Process Clause, the simple but controlling question is whether the state has given anything for which it can ask return. National Bellas Hess, Inc. v. Illinois, 386 U.S. 753, 87 S.Ct. 1389, 18 L.Ed.2d 505 (1967); Wisconsin v. J.C. Penney Co., 311 U.S. 435, 61 S.Ct. 246, 85 L.Ed. 267 (1940). However, S.M.Z. is a domestic corporation. The State of New Jersey gave it corporate life.
The distinction between the taxable status of a domestic corporation and a foreign corporation, for the purposes of the New Jersey Corporation Business Tax, is set out in the regulations. A domestic corporation acquires a taxable status by virtue of its being incorporated in New Jersey, as distinguished from those factors by which a foreign corporation attains taxable status. See N.J.A.C. 18:7-1.6, which reads:
(a) Every corporation not expressly exempted is deemed to have or to have acquired a taxable status under the Act and is required to file a return and pay a tax thereunder provided it falls within any one of the following:
1. Existing under the laws of the State of New Jersey; or
2. If a foreign corporation,
i. Holding a general certificate of Authority to do business in this State issued by the Secretary of State; or
ii. Holding a certificate, license or other authorization issued by any other State department or agency, authorizing the company to engage in corporate activity within this State; or
iii. Doing business in this State; or
iv. Employing or owning capital in this State; or
v. Employing or owning property in this State; or
vi. Maintaining an office in this State.
N.J.A.C. 18:7-1.7 and 18:7-1.8 further distinguish between both type corporations, for tax purposes, as follows:
18:7-1.7 Domestic corporations subject to tax
(a) The tax is imposed on every domestic corporation, with specified exemptions, for the mere possession of the privilege of having its corporate franchise.
(b) A domestic corporation not otherwise exempt is subject to tax for every fiscal or calendar accounting period, or part thereof, whether it does business, owns capital or property, maintains an office, or engages in any activity, whether within or without New Jersey.
(c) A domestic corporation is subject to tax even though it carries on its business entirely outside New Jersey.
18:7-1.8 Foreign corporations subject to tax
*241 (a) Qualifications for subject corporations. The tax is imposed on every foreign corporation having a taxable status as described in Section 1.6 (Taxable status; how created) of this Chapter, with specified exceptions, and includes every corporation which does business, employs or owns capital or property or maintains an office in New Jersey in a corporate or organized capacity, regardless of whether it has formally qualified or is authorized to do business in New Jersey.
S.M.Z.’s tax status results from its being a New Jersey corporation. It has long been held that a domestic corporation could be taxed by using its authorized capital stock as a measure. Roberts & Schaefer Co. v. Emmerson, 271 U.S. 50, 46 S.Ct. 375, 70 L.Ed. 827 (1926). There should be no difference where the tax measure is total net worth.
S.M.Z. accepts the principle that the equal protection provisions of both the United States and New Jersey Constitutions permit the Legislature broad discretion in formulating and arranging the state tax structure. United States Glue Co. v. Town of Oak Creek, 247 U.S. 321, 38 S.Ct. 499, 62 L.Ed. 1135 (1918); Hellman v. Taxation Div. Director, 2 N.J.Tax 240 (Tax Ct.1981). However, it attacks N.J.A.C. 18:7-7.1 as not within the fair contemplation of the enabling statute. The objective definition of what constitutes a regular place of business in another state, as detailed in N.J.A.C. 18:7-7.2(a), was specifically upheld in Hoeganaes Corp. v. Taxation Div. Director, supra, and followed by this court in Rocappi, Inc. v. Taxation Div. Director, supra.
As stated in Gritzmacher v. Taxation Div. Director, 2 N.J.Tax 489 (Tax Ct.1981),
... The party attacking a classification of the Legislature has the burden to show that it lacks a rational relationship to a legitimate state objective, and the classification will be sustained if it can be justified upon any reasonably conceivable state of facts.... [at 493]
The Business Corporation Tax Act taxes domestic corporations on both their income and net worth. It permits allocation where the out-of-state activities meet an objective criterion. That criterion is applied with equal impact on all corporations subject to the tax. As such, S.M.Z. has failed to demonstrate *242 that it is “palpably arbitrary.” Allied Stores of Ohio, Inc. v. Bowers, 358 U.S. 522, 79 S.Ct. 437, 3 L.Ed.2d 480 (1959); Hellman v. Taxation Div. Director, supra.
S.M.Z.’s “double taxation” argument has long been held inapplicable to a tax on a domestic corporation measured by all its assets where another state has imposed a tax measured by the assets located in that state. Curry v. McCanless, 307 U.S. 357, 59 S.Ct. 900, 83 L.Ed. 1339 (1939). See, also, Cream of Wheat Co. v. Grand Forks County, 253 U.S. 325, 40 S.Ct. 558, 64 L.Ed.931 (1920).
Judgment will be entered dismissing plaintiff’s complaint.

Plaintiff filed returns on a fiscal year basis. The Director’s assessment determination letter reflected calendar year assessments. However, the figures used show that the determination was applicable to the fiscal year returns.

New Jersey’s formula for allocation is to average the three ratios resulting from (1) determining the percentage of average value of assets located in New Jersey compared with the average value of all assets owned, (2) the percentage of receipts in New Jersey as compared with all receipts, and (3) the percentage of wages and salaries paid in New Jersey compared with total wages and salaries. The resulting ratio is then utilized for both the income and net worth tax computation. N.J.S.A. 54:10A-6. Connecticut uses a similar methodology in computing an allocation for income purposes. However, the net worth measure of its corporate business tax is an additional tax which is only effective if it results in a greater tax than the income tax computation. The factor used in the net worth tax computation is a specific allocation of assets located in Connecticut as compared with total assets. C.G.S.A. 12-213 et seq.